313 So.2d 335 (1975)
Louis R. BRISTER, Jr., Plaintiff-Appellee,
v.
AMERICAN INDEMNITY COMPANY, Defendant-Appellant.
No. 10249.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
*336 James H. Drury, New Orleans, for defendant-appellant.
J. Lynn Ponder, Amite, for plaintiff-appellee.
Before SARTAIN, ELLIS and BARNETTE, JJ.
SARTAIN, Judge.
This litigation grows out of a truck-motorcycle accident which occurred on June 11, 1973, at the intersection of Oak and Bay Streets in the City of Amite, Louisiana.
Plaintiff is the owner of the motorcycle. It was being ridden at the time by his minor son, Kenneth L. Brister.
At the time of the accident appellant had issued one policy to plaintiff. The policy listed two vehicles, a 1966 Chevrolet pickup truck and a 1964 Ford Galaxie automobile. Limits of liability for each vehicle are $10,000/20,000 for bodily injury, $2,000 medical payments, and $5,000/10,000 family protection (Uninsured Motorist).
Judgment was rendered in favor of the plaintiff, for the use and benefit of his minor child, in the amount of $10,000.00. Plaintiff's claims for "stacking" of medical payment benefits, statutory penalties, and attorneys' fees were rejected. It is from this judgment that appellant has appealed. Plaintiff has not appealed nor answered the appeal, hence the judgment is final as to these latter claims.
The negligence of the uninsured motorist and the extent of young Brister's injuries are conceded. However, appellant now asserts the following errors:[1]
I. The trial judge erred in permitting plaintiff to recover under the Uninsured Motorist provision of the policy, thereby failing to give effect to the exclusion in the policy for accidents occurring when the insured is operating an owned but non-insured vehicle.
II. The trial judge erred in permitting plaintiff to "stack" the Uninsured Motorist coverage limits.
I.
The basis for this assignment of error is that plaintiff was injured while riding a motorcycle which was not listed on his father's policy. The exclusionary clause sought to be invoked here provides, inter alia,
"a. to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile;".
Plaintiff candidly admits that he is urging this court to reconsider our holding in Thomas v. Nelson, 295 So.2d 847 (La.App., 1974), which held a similarly worded exclusionary clause inapplicable, and "return" to our holding in Rushing v. Allstate, 216 So.2d 875 (La.App., 1968), which gave effect to such clause and denied recovery to the plaintiffs therein.
Appellant reasons that our decision in Thomas was "apparently" based on the rationale of Elledge v. Warren, 263 So.2d 912 (3 La.App., 1972), Graham v. American Casualty Co., 261 La. 85, 259 So.2d 22 (1972), and Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972).
We do not deem it necessary to comment on the additional authorities cited by appellant. The pertinent issue for resolution of this particular assignment of error is whether plaintiff's motorcycle is an "owned automobile" within the intent of the aforementioned exclusionary clause.
In Rushing, a motorcycle was not involved. However, we did hold that coverage *337 was extended to plaintiff only when he was occupying an insured vehicle. 216 So.2d 875, 876. In Thomas, an owned but unlisted motorcycle was involved. We permitted coverage citing Elledge with approval.
While our decision in Thomas was based primarily on the language in Elledge holding the exclusionary provision to be contrary to the statute requiring uninsured motorist protection unless specifically waived, we prefer now to base our decision here on the rationale of the concurring opinion in Elledge written by Judge Hood. 263 So.2d 912, 919. Cited in this concurring opinion are numerous authorities holding that a motorcycle is not an "automobile" and therefore not excluded.

II.
We now turn to the question of whether it is permissible to "stack" uninsured motorist coverage where there is but one policy which lists two vehicles. As stated above, each vehicle was extended uninsured motorist protection to the limit of $5,000.00 per person and $10,000.00 per accident. This same issue was presented in Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (3 La.App., 1974).
In Wilkinson, plaintiff's son was fatally injured while riding as a guest passenger in an automobile insured by Lumbermen's Mutual Casualty Co. Plaintiff's insurer was Fireman's Fund Insurance Co. The uninsured negligent motorist was Johnny R. Johnson. Lumbermen's and Fireman's Fund had issued single policies to their respective insured. Each policy listed three automobiles with uninsured motorist limits of $5,000/10,000. Plaintiff sought $15,000.00 from each of the insurers. The trial judge permitted "stacking" and rendered judgment against each of the insurers in the amount of $15,000.00 for general damages. The district court's decision as to Fireman's Fund was amended on appeal to allow it credit for $3,000.00, but was otherwise affirmed.
In discussing the "stacking" issue with respect to both insurers, the court stated: 298 So.2d 915, 919
"The defendants, however, would have us hold that as long as two or more separate policies on automobiles owned by the same family are issued, (for which two different premiums are paid) the uninsured motorist coverages can be `stacked'. But, if in turn, an insured-to-be is issued a `family' policy on the same two or more automobiles, (for which two different premiums are also paid) then the uninsured motorist coverages could not be `stacked' and the insured would be limited to the minimal $5,000 (again assuming multiple injuries were not involved). Such a holding would be contrary to the intent of Graham, Deane, and the appellate court cases following them.
Admittedly in Deane, Graham and Crenwelge [v. State Farm Mutual Automobile Ins. Co., 277 So.2d 155, La.App. 1973), supra, as well as in Elledge v. Warren, 263 So.2d 912 (La.App.3rd Cir. 1972) and Roberie v. State Farm Mutual Automobile Ins. Co., 291 So.2d 923 (La. App.3rd Cir. 1974), writs denied 294 So.2d 830 (La.1964), separate policies were involved. But the clear intent of Graham, Deane, and the other cited cases is to the effect that if a plaintiff is issued insurance on two or more automobiles, pays premiums for two or more different uninsured motorist coverages, and sustains damages thereunder in excess of the mandatory minimal coverage, he can `stack' coverages and recover his damages. As stated in Elledge: `The Graham case makes it plain . . . that the purpose behind the extra payment is not extra scope for a maximum coverage of $5,000.00 but an extra amount of coverage.' This intent should not be circumvented merely because separate vehicle coverages are placed in one policy, rather than in multiple policies. Nor should the fact that the insurer allows *338 `multiple car discounts' (admittedly for administrative savings) make any difference."
Writs were applied for and granted to plaintiff. Wilkinson v. Fireman's Fund Insurance Co., 302 So.2d 304 (La.Sup.Ct., 1974). However, the application for writs on behalf of Fireman's Fund (302 So.2d 306) and Lumbermen's Mutual (302 So.2d 308) were denied with the statements: "No error of law." Thus "stacking" of uninsured motorist protection in a multiple vehicle single policy situation was permitted to stand.
Appellant cited Barbin v. United States Fidelity & Guaranty Co., 302 So.2d 631 (3 La.App., 1974)[2] as authority for the proposition that Act 137 of 1972 adding subsection D(1)(b) to L.R.S. 22:1406 was an expression of legislative intent overriding the public policy statements contained in the jurisprudence. (Graham and Deane, above). The court in Barbin did conclude just that. However, we do not construe Act 137 of 1972 as expressing such intent.
The applicable sections of L.R.S. 22:1406 read as follows:
"D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits.
(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured." (Emphasis added)
Act 137 of 1972 amended subsection D(1), above, and added subsection D(1)(b) above. It is our opinion that Act 137 of 1972 and particularly subsection D(1)(b), did not address itself to the problem of "stacking". The latter subsection simply required that an insurer must offer its insured uninsured motorist protection up to the amount of the limits of automobile liability carried by such insured. We agree with the view expressed by Judge Fruge in his dissenting opinion in Barbin.
Subsection D(1)(b) would not permit "stacking" to result in coverage in excess of the liability carried on the insured vehicle. This is in accord with the existing jurisprudence because no case has permitted "stacking" in excess of such liability and "stacking" in Barbin was properly denied because Mr. Barbin had only $5,000/10,000 liability insurance coverage.
For these reasons the judgment of the district court is affirmed at appellant's costs.
Affirmed.
NOTES
[1] Originally appellant contended that the trial judge also erred in not allowing credit for the amount paid under the medical payments provision of the policy.
[2] Writs granted Dec. 20, 1974.