332 So.2d 909 (1976)
Clayton W. POSEY, Individually and as Administrator of the Estate of his minor son, Kenneth Posey, Plaintiff-Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANY, Defendant-Appellant.
No. 12911.
Court of Appeal of Louisiana, Second Circuit.
May 24, 1976.
*910 Cook, Clark, Egan, Yancey & King by Benjamin C. King, Shreveport, for defendant, third-party plaintiff appellant, Commercial Union Ins. Co.
Alex Rubenstein, Shreveport, for defendant, third-party appellant, Ronald Palmer.
Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for plaintiff-appellee.
Before PRICE, HALL and JONES, JJ.
HALL, Judge.
Plaintiff, Clayton W. Posey, individually and as administrator of the estate of his minor son, Kenneth Posey, sued defendant, Commercial Union Insurance Company, Posey's uninsured motorist insurer, for damages arising out of an accident which occurred February 27, 1974, in which Kenneth Posey was injured when struck by a motorcycle driven by Ronald Palmer who was uninsured. Commercial Union filed a third party petition naming Ronald Palmer as third party defendant seeking to recover from Palmer any amounts it might have to pay plaintiff under its uninsured motorist coverage.
After trial, the district court rendered judgment in plaintiff's favor against the insurance company in the total amount of $15,264.90, being $2,764.90 for medical expenses incurred and $12,500 for Kenneth's pain and suffering arising out of the personal injuries suffered in the accident. Judgment was further rendered in favor of the insurance company over and against third party defendant Ronald Palmer in the same amount. Both Commercial Union and Ronald Palmer appealed.
The issues presented on appeal are as follows:
(1) The negligence of Ronald Palmer;
(2) The contributory negligence of Kenneth Posey;

*911 (3) Whether the uninsured motorist coverage extended to the vehicle operated by Palmer, the argument of no coverage being based upon a claim that the vehicle was not a highway vehicle as defined by the policy;
(4) Whether there should be a stacking of three uninsured motorist coverages under Posey's policy in light of the fact that he only owned two motor vehicles at the time of the accident; and
(5) Whether the damages awarded are excessive taking into consideration the injuries sustained, the policy limits involved, and the financial condition of the third party defendant.
Negligence of Ronald Palmer and Contributory Negligence of Kenneth Posey.
Kenneth Posey, who was 15 years of age, and Ronald Palmer, who was 20 years of age, and several other youths were playing in an open field known as the tank farm, which had recently been graded. Their activities included the operation of the Palmer motorcycle in the field. Young Posey decided to go home and began walking across the field away from the point where Palmer and his motorcycle were located. After Posey had walked some distance away, Palmer decided to give Posey a ride home or at least to the edge of the field. Palmer cranked up the motorcycle and proceeded toward Posey at a speed of approximately 25 miles per hour, having shifted into third gear. His intention was to pass by Posey, stop, and offer Posey a ride to the edge of the field. Palmer began to slow down when he got to within about 25 feet of Posey and had slowed to approximately 15 miles per hour when Posey turned around and faced the approaching Palmer, the motorcycle being about 10 to 15 feet away from Posey at that time. Posey then jumped from side to side several times. The motorcycle, sliding in the loose dirt, collided with Posey, resulting in Posey sustaining a broken arm and leg.
The insurance company and Palmer take the position that Palmer could have successfully passed by Posey and stopped except for the fact that Posey playfully jumped directly into his path of travel. Plaintiff takes the position that Posey engaged in the jumping maneuvers when he became afraid or panicked after observing the motorcycle approaching him at a rapid rate of speed causing him to believe he was going to be struck by it if he did not move one way or the other and that he made an error in judgment in jumping into the path of the vehicle.
The insurance company and Palmer argue the cause of the accident was the negligence of Posey in jumping in front of the motorcycle, creating a sudden emergency, and that Palmer was free of negligence and under the sudden emergency doctrine cannot be held to the exercise of his best judgment in trying to avoid the accident. Plaintiff argues the cause of the accident was the negligence of Palmer and also relies on the sudden emergency doctrine, contending that the sudden emergency was created by Palmer's actions in driving toward Posey at a high rate of speed, excusing Posey's action in jumping in front of the motorcycle in an effort to avoid being struck.
Our conclusion, in accord with the trial judge, is that Ronald Palmer was negligent in driving his motorcycle to within 25 feet of Posey at a speed of 25 miles per hour with the motorcycle being steered by Palmer directly at Posey or at least so close to Posey that he became concerned that he was going to be struck by the vehicle. Palmer did not have the motorcycle under proper control as he could not and did not stop it before colliding with Posey while in a slide on the loose dirt.
*912 Palmer is not entitled to the protection of the sudden emergency doctrine because the emergency was created by his own negligent conduct in operating the motorcycle at an excessive rate of speed in the immediate proximity of young Posey. See Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355 (1960) and Fulmer v. United States Fidelity & Guaranty Co., 5 So.2d 923 (La.App.2d Cir. 1941).
On the other hand, the sudden emergency doctrine is applicable to the actions of Posey because he did not contribute to the creation of the emergency. Posey did not know of Palmer's intent to stop and give him a ride to the edge of the field. When he turned around he saw the motorcycle approaching in close proximity at a rapid rate of speed. His becoming afraid and taking evasive action was a reasonable reaction to the emergency with which he was confronted. The fact that he made an incorrect decision or erroneous judgment as to which way to jump cannot be considered negligence on his part so as to bar his right to recover. Fulmer v. United States Fidelity & Guaranty Co., supra.
Coverage Under the Uninsured Motorist Insurance
The defendant insurance company, joined by the third party defendant, contend that the uninsured motorist provisions of the insurance contract between Posey and Commercial Union did not extend coverage to an accident arising out of the operation of the type of vehicle involved in this accident. They contend that the motorcycle was a trail bike not suitable for use on the highways and that the policy provides coverage only for accidents arising out of the operation of a "highway vehicle" and excludes vehicles used principally off of public roads.
The uninsured motorist endorsement to the insurance policy provides that:
"The company will pay all sums which the insured or his legal representatives shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; . . "
The policy defines "highway vehicle" as meaning:
". . . a land motor vehicle or trailer other than
(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads, . . ."
The vehicle involved in the accident was a 1971 Yamaha 175 Moto-Cross motorcycle. At the time Palmer bought it a month or so prior to the accident, it had a 1972 license plate and a title. At the time of the accident it did not have a speedometer but had a tachometer. It had no brake light, taillight or turn singles. It did not have a current state inspection sticker. The policeman who investigated the accident described it as a "trail bike". Palmer testified he had driven it on the highway only once and pushed it from his home to the open field where the accident happened.
The policy defines highway vehicle as any land motor vehicle other than certain excluded types of equipment or vehicles. A motorcycle is clearly a land motor vehicle and unless this particular motorcycle comes within the specific exclusion of "other equipment designed for use principally off public roads, while not upon public roads", the accident caused by its use is covered by the policy.
The motorcycle involved in this accident was not "designed" for use principally off public roads. It originally had been licensed and titled and contained usual road equipment. Its current condition of not being legally usable on the public roads was not because of design or modification *913 of design but was because of deterioration and lack of maintenance of its on-the-road features. Also, a motorcycle cannot be regarded as "other equipment" such as a farm type tractor specifically excluded in the same exclusionary paragraph. We conclude, therefore, that the motorcycle involved in this accident is included within the express definition of uninsured highway vehicle contained in the policy provisions and that the policy extends coverage to the accident out of which plaintiff's damages arose in this case.
Although not necessary to a decision of the coverage issue in this case, it should be noted that LSA-R.S. 22:1406D (1)(a) requires automobile liability insurance policies to provide coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured "motor vehicles" because of bodily injury. Any definition or provision in an uninsured motorist insurance policy which would exclude an ordinary motorcycle, even though deteriorated and lacking some legally required highway features, from coverage would be in derogation of the statute and void, as such a motorcycle is without question a "motor vehicle." See Thibodeaux v. St. Paul Mercury Insurance Company, 242 So.2d 112 (La.App.3rd Cir. 1970) writ refused 257 La. 622, 243 So.2d 533 (1971) and Thomas v. Nelson, 295 So.2d 847 (La.App. 1st Cir. 1974).
Appellants have cited several out-of-state cases in which certain motor vehicles or equipment have been held to fall within exclusionary clauses similar to or identical with the clause involved in this case. Beck v. Unigard Insurance Company, 531 P.2d 907 (Or.S.Ct.1975), (standard passenger car modified as a stock racing car); Walcott v. Hawkeye-Security Insurance Company, 189 Neb. 161, 201 N.W.2d 817 (1972), (automobile modified as a stock car racer); Kansas Farm Bureau. Insurance Company v. Cool, 205 Kan. 567, 471 P.2d 352 (1970), (dune buggy). Each of these cases is distinguishable from the instant case either because of the nature of the design or modified design of the vehicle involved or by the more limited provisions of the statutes requiring uninsured motorist coverage in those states.
"Stacking" of Coverages
The insurance policy involved in this case is a garage liability policy issued by Commercial Union to Clayton W. Posey d/b/a P & S Speedometer Service. It provides various types of coverages pertaining to the insured's garage operations, including automobile liability insurance. The policy does not list any specific vehicles or number of vehicles for which liability insurance is afforded. The schedule of coverages and premiums attached to the policy shows under the column headed endorsements "UM (3 cars) G1679-2 $87.00." Attached to the policy is an uninsured motorist insurance endorsement which contains the usual policy limit provision of $5,000 per person and $10,000 per accident.
Clayton Posey testified that at the time of the accident he owned two vehicles, a pickup truck and a family automobile. Although the evidence is not entirely clear, the implication of the evidence is that at the time the policy was issued Posey owned three vehicles, but disposed of one of them between the time the policy was issued and the time of the accident.
Plaintiff contends that under the jurisprudence he is entitled to "stack" three uninsured motorist coverages of $5,000 each, or a total of $15,000. The defendant insurance company contends plaintiff is entitled to "stack" only two uninsured motorist coverages because at the time of the accident the insured only owned two vehicles for which liability insurance was afforded.
The basis for "stacking" in Louisiana is the holding of our courts that LSA-R.S. *914 22:1460D requires that each policy of liability insurance issued must provide uninsured motorist coverage with limits of not less than $5,000/$10,000 with respect to each vehicle covered by the liability insurance.[1]Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972); Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Crenwelge v. State Farm Mutual Automobile Ins. Co., 277 So. 2d 155 (La.App.3d Cir. 1973); Elledge v. Warren, 263 So.2d 912 (La.App.3d Cir. 1972) writ refused 262 La. 1096, 266 So.2d 223; Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (La.App.3d Cir. 1974), writ refused La., 302 So.2d 306, 308; Bourgeois v. Government Employees Insurance Co., 316 So.2d 804 (La.App.1st Cir. 1975) writ refused La., 320 So.2d 914 (1975); Brister v. American Indemnity Company, 313 So.2d 335 (La.App.1st Cir. 1975); and Barbin v. United States Fidelity & Guaranty Company, 315 So.2d 754 (La. 1975).
Thus, where more than one liability policy is issued covering one vehicle, the limits of the uninsured motorist coverage required to be provided is the cumulative minimum ($5,000/$10,000) limits of the policies. Where one liability policy is issued covering more than one vehicle, the uninsured motorist coverage required to be provided is the cumulative minimum ($5,000/ $10,000) limits for each vehicle. Any provision in the policy purporting to limit the uninsured motorist coverage provided to less than the limits required as set forth above has been held invalid and of no effect.
The policy in the instant case differs from the family liability insurance policies which listed and identified specific vehicles such as were involved in the Wilkinson case in that the garage liability policy does not specify the number of vehicles covered nor identify the vehicles covered.
At the time the policy was issued the insured apparently owned three vehicles. The policy itself contains the notation "U/M (3 cars)" and the premium for uninsured motorist coverage was apparently calculated on the basis of three vehicles. The automobile provisions of the policy provide coverage for vehicles owned by the insured and, as interpreted by the courts, LSA-R.S. 22:1406D requires uninsured motorist coverage with minimum limits with respect to each covered vehicle. It must be concluded that at the time the policy was issued, the policy afforded, as required by the statute, uninsured motorist coverage with a cumulative limit of $15,000/$30,000.
At the time of the accident, the insured only owned two vehicles. Liability coverage was then afforded and in effect with respect to only two vehicles. It follows that the statute only required, at that point in time, uninsured motorist coverage with minimum limits with respect to the two vehicles, or cumulative limits of $10,000/$20,000. The contractual $5,000/$10,000 limits provided in the policy are in derogation of the statute only to that extent.
*915 Our holding is that the policy in question at the time of the accident afforded uninsured motorist coverage in the amount of $10,000 for injuries to one person. Stated otherwise, plaintiff is entitled to stack only two coverages for a total of $10,000. It follows that the judgment against the insurance company must be reduced to the amount of its coverage and the judgment against the third party defendant must be reduced to the amount which the insurance company is required to pay to the plaintiff.
Quantum
Kenneth Posey sustained a broken arm and a broken leg in the accident. He was required to undergo surgery under general anesthetic for the setting of both broken bones. His arm and his leg were in casts for a considerable period of time. At first he was unable to use crutches because of the broken arm and then was on crutches for a period of time. A basketball player, he missed an entire season. About a year after the accident he was required to have additional surgery for the removal of a metal plate and screws from his leg. The amount of $12,500 fixed as general damages by the trial judge was well within the range of his sound discretion.
Third party defendant complains that the trial court did not take into consideration his limited means in fixing the amount of damages. There is little evidence in the record of third party defendant's financial condition. In any event, the circumstances and posture of this case do not justify a mitigation or reduction of the judgment in favor of the insurance company against the third party defendant under the insurance company's subrogation rights.
For the reasons assigned, the judgment of the district court is amended to provide that the liability of Commercial Union Insurance Company shall not exceed the sum of $10,000. The judgment is further amended to reduce the amount of the judgment in favor of Commercial Union Insurance Company against third party defendant, Ronald Palmer, to the sum of $10,000. As amended the judgment of the district court is affirmed. Costs of the appeal are assessed to Commercial Union Insurance Company.
Amended, and as amended, affirmed.
NOTES
[1] the policy involved in this case was issued and the accident occurred prior to the 1974 and subsequent amendments to LSA-R.S. 22:1406. At all times pertinent to this suit LSA-R.S. 22:1406D(1)(a) read as follows:

No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.