517 So.2d 686 (1988)
Raymond COLEMAN, et al., Petitioners,
v.
FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Respondent.
No. 70075.
Supreme Court of Florida.
January 7, 1988.
*687 William N. Graham of William N. Graham, P.A., Tampa, for petitioners.
Raymond T. Elligett, Jr. and Charles P. Schropp of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for respondent.
EHRLICH, Justice.
We have for review Florida Insurance Guaranty Association, Inc. v. Coleman, 501 So.2d 32 (Fla. 2d DCA 1986), in which the district court certified the following question as being of great public importance:
WHEN AN INSURED HAS PURCHASED UNINSURED MOTORIST COVERAGE BUT HAS NOT MADE AN INFORMED REJECTION OF UNINSURED MOTORIST COVERAGE LIMITS HIGHER THAN THOSE PURCHASED, MAY THE INSURED STACK A NUMBER OF UNINSURED MOTORIST COVERAGES EQUAL TO THE NUMBER OF CARS OWNED BY THE INSURED OR MAY HE ONLY STACK THE NUMBER OF UNINSURED MOTORIST COVERAGES FOR WHICH HE PAID A PREMIUM?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We hold that uninsured motorist coverage should be stacked on the basis of the number of coverages for which an *688 insured paid a premium and we approve the decision of the district court below.
Sandra Coleman, the owner of a used car sales lot, purchased a garage insurance policy in the name of Sandra Coleman d/b/a Coleman Auto Sales. Mrs. Coleman and her husband were "Class I" insureds under the policy, i.e., the named insured and resident family members. On April 23, 1983, her husband, Raymond Coleman, was injured in an automobile accident. The insurers of two other cars involved in the accident paid him the limits of their coverages for a combined total of $75,000. The Coleman's then sought uninsured motorist coverage under the garage policy. Because the company that issued the garage policy to Mrs. Coleman is insolvent, the claim is directed against the respondent, Florida Insurance Guaranty Association (FIGA).
The dispute at trial concerned how much uninsured motorist coverage is available under the policy and on what basis the uninsured motorist coverage should be "stacked".[1] The argument asserted by the petitioners in the present proceeding and in the proceedings below is that they are entitled to stack a number of uninsured motorist coverages equal to the number of cars owned by the insured on the day of the accident. The trial court determined that uninsured motorist coverage should be stacked on the basis of the number of motor vehicles for which liability coverage was extended. The trial court's order states that the policy clearly provided liability insurance for any car titled in the named insured and that, accordingly, the uninsured motorist coverage should be stacked according to the number of cars owned by the named insured on the date of the accident. The district court reversed the trial court, concluding that two UM premiums were paid and therefore only two uninsured motorist coverages should have been stacked in this case. 501 So.2d at 33.
In support of their argument, petitioners first state that there was no informed rejection of uninsured motorist coverage limits equal to the limits of the liability coverage. Relying on section 627.727, Florida Statutes (1981), petitioners contend the result of the lack of informed rejection is that uninsured motorist coverage was automatically extended on all vehicles on which liability coverage is purchased. The petitioners then conclude that because liability coverage was extended under the policy to all the motor vehicles in Mrs. Coleman's inventory, uninsured motorist coverage should be stacked according to the number of owned motor vehicles.
Petitioners appear to have confused the lack of informed rejection, which affects only the amount of uninsured motorist coverage, with the separate issue of when and on what basis uninsured motorist coverage is stacked. Section 627.727(2), Florida Statutes, provides that "[t]he limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the company's rating plan as may be selected by the named insured." This section has been interpreted as requiring that a rejection of uninsured motorist coverage or a selection of lower limits of coverage be knowingly made by the insured. Kimbrell v. Great American Insurance Co., 420 So.2d 1086 (Fla. 1982). If no informed selection of lower limits is made by the insured, the limits of uninsured motorist coverage are merely tied to the limits of liability insurance. See American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206, 208 (Fla. 1983). Mrs. Coleman's policy provided liability insurance in the amount of $25,000.00 and uninsured motorist coverage in the amount of $20,000.00 for covered autos. Because she had not made an informed selection of uninsured motorist coverage in an amount less than the liability coverage, the trial court entered a partial summary judgment correctly finding that Mrs. Coleman was entitled to uninsured motorist limits equal *689 to the liability limit of $25,000.00. Contrary to petitioners' argument, however, section 627.727 does not provide that the lack of an informed rejection of uninsured motorist coverage equal to the limits of liability coverage results in the number of uninsured motorist coverages being equal to the number of cars covered by liability insurance.
Furthermore, it appears the petitioners, in making their argument, have misinterpreted their policy. Liability coverage, like uninsured motorist coverage, is expressly provided in the policy for "any auto." The Colemans would have had liability insurance covering them in any car they drove, not merely owned vehicles. We agree with the analysis of the district court below.
[T]he Colemans' argument cannot be accepted because it would lead to an irrational result. To conclude that the UM coverage to be stacked is coextensive with the liability coverage would require stacking UM coverage for every car which the Colemans could conceivably drive whether owned by them or not. Recognizing that irrationality, the Colemans argue that the number of coverages should be limited to the number of cars owned by them. But, their argument is inconsistent. While arguing to increase the number of UM coverages by tying UM coverage to the number of cars which could be covered under the liability section of the policy, the Colemans recognize that they must limit the almost infinite number of cars which that argument would actually produce in order to bring the total number of cars within a sensible range. Therefore, they argue that UM coverage should apply only to the number of cars owned by the Colemans. However, as we have said, the number of cars owned has no relationship to the extent of liability coverage under the terms of the policy.
501 So.2d at 34 (citations omitted). Accordingly, we reject the petitioners' argument that they are entitled to stack uninsured motorist coverage for every car they own based on the lack of an informed rejection of uninsured motorist coverage equal to liability limits.
We agree with the district court below that "the case law supports tying the number of UM coverages available to the number of premiums for which UM coverage was paid." 501 So.2d at 34. Uninsured motorist protection does not inure to a particular motor vehicle, but instead protects the named insured or insured members of his family against bodily injury inflicted by the negligence of any uninsured motorist under whatever conditions, locations, or circumstances any of such insureds happen to be in at the time. See Mullis v. State Farm Mutual Auto Insurance Co., 252 So.2d 229 (Fla. 1971); Tucker v. Government Employees Insurance Co., 288 So.2d 238, 242 (Fla. 1973). Thus, the insured may be a pedestrian at the time of such injury, riding in motor vehicles of others or in public conveyances or occupying motor vehicles owned by but which are not "insured automobiles" of the named insured. Mullis, 252 So.2d at 233. It is this aspect of uninsured motorist coverage which gives rise to aggregation or "stacking" of uninsured motorist coverages. The owner of several vehicles, by paying a single premium for coverage applicable to only one of them, secures coverage for himself and his family while occupying the uninsured vehicles as well as the insured vehicle. Thus, when an insured pays additional uninsured motorist coverage premiums, he has purchased additional coverage "coextensive with and supplementing the insurance already available under a single coverage." Schermer, Automobile Liability Insurance, § 31.02[8] (1987). Otherwise, nothing would have been gained by payment of an additional premium because the insured's purchase of a single uninsured motorist coverage protects him "whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist." Mullis, 252 So.2d at 238.
Thus, in Sellers v. United States Fidelity & Guaranty Co., 185 So.2d 689 (Fla. 1966), it was held that an insured protected by more than one policy of uninsured motorist insurance was entitled to recover under all such policies to the extent of his bodily injury. Later, in Tucker, this Court *690 stated that the same rule applied when multiple coverage was afforded in a single policy rather than multiple policies. As we stated in Tucker, "[a]n insured under uninsured motorist coverage is entitled by the statute to the full bodily injury protection that he purchases and for which he pays premiums," regardless of the number of vehicles covered by his auto liability policy. 288 So.2d 238, 242 (Fla. 1973). Accordingly, consistent with this Court's decision in Tucker, we hold that an insured may stack a number of uninsured motorist coverages equal to the number of coverages for which he paid a premium.
We reject the petitioners' argument that the policy indicates a single premium amount which extends a separate uninsured motorist coverage to each of the fifteen vehicles owned on the date of the accident and that the district court therefore erred in determining that they paid for only two uninsured motorist coverages. The Coleman's position appears to be based on an interpretation of Section 627.727 which requires that separate uninsured motorist coverage be provided for each vehicle. As we noted in Mullis, however, the statute "requires that uninsured motorist coverage be included in all policies delivered or issued for delivery in Florida... ." 252 So.2d at 238 (Emphasis added). We interpret this to require only that each of several vehicles insured under a single policy be covered by a minimum of one coverage, with no requirement of separate coverage for each. Accord Lopez v. Foundation Reserve Insurance Co., 98 N.M. 166, 646 P.2d 1230 (1982).[2] The district court correctly determined that premiums were paid by Mrs. Coleman for two uninsured motorist coverages. Item Two of the policy shows the amount of premium for each type of coverage. The premium for the uninsured motorist coverage was $14.00. Item Ten of the policy discloses the calculation of this premium: "Number of Plates  2" and "Rate Per Plate  7.00" and a premium of $14.00. It is undisputed that while Mrs. Coleman's auto business had a varying number of vehicles on the lot at any given time which could be operated by using up to fifty temporary paper tags, her business had two permanent dealer plates. We also reject petitioners' claim that the district court, in reaching this conclusion, erroneously ignored expert testimony that petitioners paid premiums on all owned vehicles covered under the policy and improperly substituted its judgement for that of the trial court on a question of fact. The question of the extent of coverage under the insurance policy in this case is a question of law and is therefore subject to plenary review. See Bradley v. Government Employees Insurance Co., 460 So.2d 981 (Fla. 3d DCA 1984); Gulf Tampa Drydock Co. v. Great Atlantic Insurance Co., 757 F.2d 1172, 1174 (11th Cir.1985) (citing Smith v. State Farm Mutual Automobile Insurance Co., 231 So.2d 193 (Fla. 1970)); Drisdom v. Guarantee Trust Life Insurance Co., 371 So.2d 690 (Fla. 3d DCA 1979).
An injured party cannot recover under his own uninsured motorist policy if the tortfeasor has liability insurance with policy limits equal to or greater than those contained in the injured person's uninsured motorist policy. Bayles v. State Farm Mutual Automobile Insurance Co., 483 So.2d 402, 404 (Fla. 1985). The uninsured motorist coverage available under Mrs. Coleman's policy is $50,000 ($25,000 uninsured motorist limits multiplied by two coverages purchased). Because petitioners received an amount in excess of $50,000 in settlement from the insurers of two other cars involved in the accident, no uninsured motorist coverage is available under the policy. We therefore need not address petitioners' final contention regarding the manner in which the trial court calculated the net award under the policy.
In summary, we hold that the number of uninsured motorist coverages available to *691 be stacked should be based upon the number of coverages for which uninsured motorist premiums were paid. We also conclude that the district court below correctly determined that the petitioners in the instant case paid for two uninsured motorist coverages. Accordingly, we approve the decision below.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Although the policy provided that the limit of uninsured motorist insurance shown in the declarations ($20,000.00) was the most that would be paid for any one accident regardless of the number of covered autos or insureds, such provisions have been held to be invalid. Tucker v. Government Employees Ins. Co., 288 So.2d 238 (Fla. 1973).
[2] The petitioners' reliance on Posey v. Commercial Union Insurance Co., 332 So.2d 909 (La. Ct. App. 1976), is therefore unwarranted. In contrast to our interpretation of section 627.727(1), Louisiana courts interpreted 22:1406D as requiring that each policy of liability insurance issued provide uninsured motorist coverage with respect to each vehicle covered by the liability insurance.