39 So.3d 244 (2010)
John RANDO, et al., Appellants,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellee.
No. SC09-240.
Supreme Court of Florida.
April 8, 2010.
Rehearing Denied July 6, 2010.
*245 Bryan S. Gowdy of Mills Creed and Gowdy, P.A., Jacksonville, FL, and Timothy S. Babiarz of Babiarz Law Firm, P.A., The Villages, FL, for Appellant.
Angela C. Flowers of Kubicki Draper, Ocala, FL, for Appellee.
LABARGA, J.
This case is before the Court for review of a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. In Rando v. Government Employees Insurance Co., 556 F.3d 1173 (11th Cir.2009), the Eleventh Circuit certified the following question to this Court:
WHETHER, UNDER FLORIDA LAW, AN AUTOMOBILE INSURANCE POLICYWHICH WAS EXECUTED, ISSUED AND DELIVERED IN FLORIDA TO THE NAMED INSUREDS RESIDING IN FLORIDA *246 FOR A CAR THAT IS REGISTERED AND GARAGED IN DELAWAREMAY VALIDLY PROVIDE THAT UNINSURED MOTORIST COVERAGE UNDER THAT POLICY MAY NOT BE COMBINED WITH UNINSURED MOTORIST COVERAGE PROVIDED BY A SEPARATE AUTOMOBILE POLICY ALSO ISSUED BY THE INSURER TO THE NAMED INSUREDS IN FLORIDA.
As we discuss below, we answer the certified question in the negative. We conclude that under Florida law, the uninsured motorist anti-stacking provision contained in the Randos' motor vehicle insurance policywhich was executed, issued and delivered in Florida to the named insureds residing in Florida and thus subject to Florida lawis unenforceable where the insurer, the Government Employees Insurance Company (GEICO), failed to satisfy the informed consent requirement of section 627.727(9), Florida Statutes (2005).[1]

Facts and Procedural Background
The facts of this case are fully set forth in the Eleventh Circuit Court of Appeals' opinion in Rando v. Government Employees Insurance Co., 556 F.3d 1173 (11th Cir.2009). We summarize the salient facts here. Florida resident John Rando sustained permanent, life-altering injuries in a 2005 automobile accident. The accident occurred in Florida and was caused by an underinsured driver. At the time of the accident, John Rando and his wife Gail Rando were the named insureds on two motor vehicle insurance policies issued by GEICO. One policy, the Florida policy, covered two vehicles that were registered and principally garaged in Florida. The second policy, the Delaware policy, covered a vehicle that was registered and principally garaged in Delaware, where the Randos' daughter resided. The Randos lived in Delaware until 2004, when they moved to Florida and established residency here. The Delaware policy was executed, issued and delivered in Florida. There was no express choice of law provision in the Delaware policy.
Each of the Randos' motor vehicle policies provided uninsured motorist coverage, and the Randos paid premiums for coverage on each vehicle. Following the accident, the Randos were paid the full amount of uninsured motorist benefits under the Florida policy. However, they were denied benefits under the Delaware policy because of a provision that prohibited the combining, or stacking, of uninsured motorist benefits from separate GEICO motor vehicle policies. The anti-stacking provision in the Delaware policy stated:
If separate policies with us are in effect for you or any person in your household, they may not be combined to increase the limit of our liability for a loss.
The Randos originally filed suit against GEICO in state court, but thereafter GEICO removed the case to the federal district court. The district court concluded, and the parties stipulated, that Florida law applies to determine the rights and liabilities under the Delaware policy. The district court granted summary judgment in favor of GEICO, concluding that the anti-stacking provision contained in the Delaware policy was enforceable because the vehicle *247 covered by the policy was neither registered nor principally garaged in Florida. The Randos appealed the district court's decision to the Eleventh Circuit Court of Appeals. Given the absence of controlling Florida precedent, the Eleventh Circuit certified for this Court's determination the question of whether the anti-stacking provision contained in the Delaware policy is enforceable under Florida law. As we explain below, we conclude that the provision is not enforceable.

Analysis
The question certified to this Court is a pure question of law. Consequently, the standard of review is de novo. See Jackson-Shaw Co. v. Jacksonville Aviation Authority, 8 So.3d 1076, 1085 (Fla. 2008) (citing Macola v. Gov't Employees Ins. Co., 953 So.2d 451, 454 (Fla.2006)). We begin by explaining why Florida law applies to the issue raised by the certified question. We continue with an overview of Florida law in the area of uninsured motorist coverage and stacking, and we address the certified question in this case.

Applicability of Florida Law to Interpret the Randos' Delaware Policy
In this case, we are guided by the lex loci contractus rule, which provides that the law of the state where an insurance contract is executed is the law that "governs the rights and liabilities of the parties in determining an issue of insurance coverage." State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163 (Fla.2006). Because the Delaware policy was executed, issued, and delivered in Florida, it is the law of Florida that forms the basis for our interpretation of the parties' rights and liabilities in this case.[2]

Uninsured Motorist Coverage and Stacking
As noted in the district court's order, Florida's public policy, as reflected in section 627.727, Florida Statutes, favors the providing of insurance coverage for losses caused by uninsured motorists. "Uninsured motorist protection does not inure to a particular motor vehicle, but instead protects the named insured or insured members of his family against bodily injury inflicted by the negligence of any uninsured motorist under whatever conditions, locations, or circumstances any of such insureds happen to be in at the time." Coleman v. Florida Ins. Guar. Ass'n, Inc., 517 So.2d 686, 689 (Fla.1988) (citing Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229 (Fla.1971)).
In the event of a loss caused by an uninsured motorist, stacking allows an insured who pays separate premiums for uninsured motorist coverage to obtain benefits for each premium paid. Rando, 556 F.3d at 1175 n. 1 (quoting United Servs. Auto. Ass'n v. Roth, 744 So.2d 1227, 1229 (Fla. 4th DCA 1999)). Florida law with respect to the stacking of uninsured motorist coverage has evolved over the last four decades. At present, although Florida law prohibits the stacking of most forms of motor vehicle insurance coverage, uninsured motorist coverage is expressly excluded from this prohibition. See § 627.4132, Fla. Stat. (2009) (providing that the prohibition against stacking of motor vehicle insurance policies contained in that statute "does not apply ... [t]o uninsured motorist coverage"). Therefore, the stacking of uninsured motorist coverage is permissible under Florida law. *248 Moreover, the stacking of uninsured motorist coverage was permissible at the times relevant to the events in this case. We have explained the rationale for stacking uninsured motorist coverage as follows:
The owner of several vehicles, by paying a single premium for coverage applicable to only one of them, secures coverage for himself and his family while occupying the uninsured vehicles as well as the insured vehicle. Thus, when an insured pays additional uninsured motorist coverage premiums, he has purchased additional coverage "coextensive with and supplementing the insurance already available under a single coverage." Schermer, Automobile Liability Insurance, § 31.02[8] (1987). Otherwise, nothing would have been gained by payment of an additional premium because the insured's purchase of a single uninsured motorist coverage protects him "whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist." Mullis, 252 So.2d at 238.
Coleman, 517 So.2d at 689.
Although the Randos paid three separate premiums for uninsured motorist coverage, the Delaware policy expressly precludes combining the Randos' Florida and Delaware policies in order to increase the amount of uninsured motorist benefits available to them. In other words, the Delaware policy prohibits the stacking of the Randos' Delaware uninsured motorist coverage with the Florida policy. Because the Delaware policy was executed in Florida and Florida law governs whether the anti-stacking provision contained in the Delaware policy is enforceable, we next examine the treatment of anti-stacking provisions under Florida law.

Limitations on Anti-Stacking Provisions in Florida
In 1987, section 627.727, Florida Statutes, which governs uninsured motorist coverage in Florida, was amended to provide specific guidelines for limiting the scope of uninsured motorist coverage in a given insurance policy. This amendment resulted in the creation of section 627.727(9), Florida Statutes (1987). See ch. 87-213, § 1, at 1341-42, Laws of Fla. At the time the Delaware policy was executed, this subsection provided (and still provides) that insurers may offer their insureds policies which limit coverage under certain stated conditions:
627.727 Motor vehicle insurance; uninsured and underinsured vehicle coverage; insolvent insurer protection.
. . . .
(9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:
(a) The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident, except as provided in paragraph (c).
(b) If at the time of the accident the injured person is occupying a motor vehicle, the uninsured motorist coverage available to her or him is the coverage available as to that motor vehicle.
(c) If the injured person is occupying a motor vehicle which is not owned by her or him or by a family member residing with her or him, the injured person is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which she or he is a named insured or insured family member. Such coverage shall be excess over *249 the coverage on the vehicle the injured person is occupying.
(d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.
(e) If, at the time of the accident the injured person is not occupying a motor vehicle, she or he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which she or he is insured as a named insured or as an insured resident of the named insured's household.
§ 627.727(9), Fla. Stat. (2005). The stacking limitation in subsection (9)(a), which provides that insurers may issue a policy stating that "[t]he coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident," is akin to the anti-stacking provision contained in the Randos' Delaware policy.
However, section 627.727(9) also places limitations on how an insurer may restrict uninsured motorist coverage. Section 627.727(9) provides that in order for an insurer to prohibit the stacking of multiple uninsured motorist policies, it must satisfy certain requirements:
In connection with the offer authorized by this subsection, insurers shall inform the named insured, applicant, or lessee, on a form approved by the office, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations. When the named insured, applicant, or lessee has initially accepted such limitations, such acceptance shall apply to any policy which renews, extends, changes, supersedes, or replaces an existing policy unless the named insured requests deletion of such limitations and pays the appropriate premium for such coverage. Any insurer who provides coverage which includes the limitations provided in this subsection shall file revised premium rates with the office for such uninsured motorist coverage to take effect prior to initially providing such coverage. The revised rates shall reflect the anticipated reduction in loss costs attributable to such limitations but shall in any event reflect a reduction in the uninsured motorist coverage premium of at least 20 percent for policies with such limitations. Such filing shall not increase the rates for coverage which does not contain the limitations authorized by this subsection, and such rates shall remain in effect until the insurer demonstrates the need for a change in uninsured motorist rates pursuant to s. 627.0651.
§ 627.727(9), Fla. Stat. (2005) (emphasis added).
Thus, while section 627.727(9) provides insurers with a mechanism to provide less coverage to an insured, it also protects the insured by requiring that the insurer obtain informed consent from the insured. Using a form approved by the Office of Insurance Regulation (OIR), the insurer shall inform the named insured of the limitations authorized by section 627.727(9), and advise the insured that the offer is an alternative to a policy without those limitations. The insured's signature on the OIR-approved form establishes an informed and knowing acceptance of the limitations. Additionally, the statute requires *250 the insurer to file revised rates that reflect a minimum of a twenty percent decrease in rates as a result of the limited coverage.
Thus, Florida law provides a mechanism for insurers to include anti-stacking provisions in their policies; however, in order to do so, the insurers must satisfy the requirement of informed consent by the insured. "It is our opinion that these requirements were the quid pro quo given by the legislature to insurers for the right to limit uninsured motorist coverage by this exclusion." Gov't Employees Ins. Co. v. Douglas, 654 So.2d 118, 120-21 (Fla. 1995). It is this requirement that we conclude dictates the outcome in this case. GEICO concedes that it did not obtain informed consent from the Randos for the anti-stacking provision. Consequently, the anti-stacking provision is unenforceable under Florida law because GEICO did not satisfy the informed consent requirement.
Because uninsured motorist coverage protects the insured, we reject the argument that the informed consent requirement does not apply in this case because the vehicle covered by the Delaware policy was not "registered or principally garaged" in Florida. The language "registered or principally garaged" is derived from section 627.727(1), Florida Statutes (2005), which compels insurers to provide uninsured motorist coverage in or supplemental to any motor vehicle liability insurance policy "delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in [Florida]." Although subsection (1) compels the issuance of uninsured motorist coverage with respect to certain vehiclesthose vehicles registered or principally garaged in Floridawe do not interpret this language as limiting our application of subsection (9) only to policies for vehicles registered or principally garaged in Florida. Once GEICO's Delaware policy was executed in Florida and issued and delivered to the named insureds in Florida, the requirements in subsection (9) extended to that policy and to any attempts to limit the stacking of the Randos' uninsured motorist coverage. In sum, we conclude that section 627.727(9) applies in this instance and that the Randos' informed consent was required by Florida law in order to validate the anti-stacking provision contained in the Delaware policy. Because GEICO did not obtain the Randos' informed consent before the Delaware policy was executed in Florida, the anti-stacking provision is not enforceable under Florida law.
Consequently, we answer the certified question in the negative and return this case to the Eleventh Circuit Court of Appeals for further consideration.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, and PERRY, JJ., concur.
CANADY and POLSTON, JJ., dissent with opinions.
CANADY, J., dissenting.
Because I conclude that the provisions of section 627.727(9), Florida Statutes (2005), have no application to policies with respect to motor vehicles that are not "registered or principally garaged in the state," as provided in section 627.727(1), I would answer the certified question in the affirmative.
Based on statutory context and history, subsection (9) of section 627.727 is most reasonably understood as ancillary to subsection (1), which provides thatabsent a *251 written rejectionno motor vehicle liability policy within the statute's scope be issued without the provision of uninsured motorist (UM) coverage. The provisions of subsection (9) permit insurers to offer policies with unstacked UM coverage when certain conditions are met, thereby providing a means for insurers to escape subsection (1)'s implied prohibition on unstacked coverage. See Sellers v. U.S. Fid. & Guar. Co., 185 So.2d 689 (Fla.1966). That implied prohibition does not arise with respect to policies that are outside the scope of subsection (1).
Subsection (1) embodies a regulatory rule adopted by the Legislature governing policies which are "delivered or issued for delivery in this state" and which cover "motor vehicle[s] registered or principally garaged in this state." The text of subsection (1) reflects a conscious limitation on the scope of the regulatory rule mandating the offering of UM coverage. For that regulatory rule to apply it is not sufficient that the insurance policy "be delivered or issued for delivery in this state." It is also necessary that the vehicle covered by the policy be a "motor vehicle registered or principally garaged in the state."
There is no basis for concluding that the reference to "policies of uninsured motorist coverage" in subsection (9) extends to policies of "uninsured motorist coverage" that do not fall within the scope of subsection (1). Subsection (9) is part of a unified statutory scheme governing UM coverage which is anchored in subsection (1). Nothing in the text or history of the statute suggests that the subsidiary regulatory provision in subsection (9) reaches further than the underlying regulatory provision in subsection (1). On the contrary, when subsection (1) refers to "the coverage required under this section," it suggests that the subsequent subsections must be understood in pari materia with subsection (1) and that a policy of insurance cannot fall within the scope of subsection (9) if it does not fall within the scope of subsection (1). This interpretation is reinforced by the reference in subsection (9) to "the offer authorized by this subsection"language which indicates that subsection (9) operates not as a freestanding regulatory requirement but as an alternative to certain policy requirements that ordinarily flow from subsection (1).
Accordingly, the offer of unstacked UM coverage authorized by subsection (9) operates as an alternative to the offer of stacked UM coverage required by subsection (1). The conditions associated with subsection (9)'s alternative offer of unstacked coverage are irrelevant to policies that are not subject to the requirement for the offer of stacked coverage under subsection (1).
In short, the text of section 627.727 does not require that the conditions in subsection (9) be applied to a policy of insurance providing unstacked UM coverage on a vehicle that is neither registered nor principally garaged in Florida. I therefore dissent from the majority's contrary conclusion.
POLSTON, J., dissenting.
I dissent to the majority's answer to the certified question. I would answer the question, as phrased by the Eleventh Circuit, with a qualified affirmative. A policy may provide for anti-stacking, but only if the anti-stacking provision in a policy controlled by Florida law complies with section 627.727(9), Florida Statutes (2005). I could agree with the majority's decision to answer the certified question in the negative if the majority had rephrased it as follows:
WHETHER AN AUTOMOBILE INSURANCE POLICY, CONTROLLED BY FLORIDA LAWISSUED TO *252 THE NAMED INSUREDS RESIDING IN FLORIDA FOR A CAR THAT IS REGISTERED AND GARAGED IN DELAWAREMAY VALIDLY PROVIDE THAT UNINSURED MOTORIST COVERAGE UNDER THAT POLICY MAY NOT BE COMBINED WITH UNINSURED MOTORIST COVERAGE PROVIDED BY A SEPARATE AUTOMOBILE POLICY ALSO ISSUED BY THE INSURER TO THE NAMED INSUREDS IN FLORIDA, WITHOUT SATISFYING SECTION 627.727(9), FLORIDA STATUTES.
Although I disagree with the majority's answer to the question as certified, I agree with the majority that Florida law applies to the policy at issue because the Eleventh Circuit certified the question on the parties' stipulation that Florida law applies under the lex loci contractus rule. The Delaware policy contains no choice of law provision that is applicable in this case; therefore, lex loci contractus was properly applied. See Shaps v. Provident Life & Accident Ins. Co., 826 So.2d 250, 254 n. 3 (Fla.2002) ("Under Florida's conflicts of law rules, the doctrine of lex loci contractus directs that, in the absence of a contractual provision specifying governing law, a contract, other than one for performance of services, is governed by law of the state in which the contract is made." (quoting Shaps v. Provident Life & Accident Ins. Co., 244 F.3d 876, 881 (11th Cir.2001))); State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1164 (Fla. 2006) ("[Lex loci ] will control absent some provision to the contrary.").
Because Florida law applies, I agree with the majority's analysis and application of section 627.727(9) to this case. Consequently, I agree that, because GEICO did not obtain the Randos' requisite informed consent, the anti-stacking provision is not enforceable under Florida law.
Accordingly, although I agree with the majority's analysis, I respectfully dissent to the majority's negative answer to the certified question.
NOTES
[1] The certified question, Florida's uninsured motorist statute, and the Delaware policy each use the term "uninsured" motorist coverage to encompass both uninsured and underinsured motorist coverage. The Randos' case technically falls into the class of underinsured motorist coverage since the at-fault party was insured and the Randos did recover $10,000 under that policy.
[2] Moreover, as we previously noted, both parties stipulated to the applicability of Florida law.