640 So.2d 46 (1994)
WORLD WIDE UNDERWRITERS INSURANCE COMPANY, etc., Petitioner,
v.
Steven WELKER, Respondent.
No. 80478.
Supreme Court of Florida.
March 31, 1994.
Rehearing Denied July 6, 1994.
Edward D. Schuster, Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A., Fort Lauderdale, for petitioner.
Susan S. Lerner, Kutner, Rubinoff, Thompson & Bush, Miami, for respondent.
Louis K. Rosenbloum, Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, amicus curiae, for Academy of Florida Trial Lawyers.
OVERTON, Justice.
We have for review Welker v. World Wide Underwriters Insurance Co., 601 So.2d 572 (Fla. 4th DCA 1992), in which the district court held that Steven Welker, who was injured while driving a pickup truck owned by him, was entitled to uninsured motorist coverage under an automobile insurance policy issued to his mother, even though that policy excluded coverage when Welker was operating his own vehicle. The district court determined that the policy exclusion pertaining to accidents involving Welker's vehicle was unenforceable *47 based on this Court's decision in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971). We find that the district court's decision in this case conflicts with Valiant Insurance Co. v. Webster, 567 So.2d 408 (Fla. 1990), and Bolin v. Massachusetts Bay Insurance Co., 518 So.2d 393 (Fla. 2d DCA 1987).[1] We quash the district court's decision and find that, because the World Wide policy did not provide liability coverage to Welker for accidents involving his vehicle, World Wide was not obligated to provide uninsured motorist coverage to Welker for this accident.
The record establishes the following pertinent facts. In 1986, while attempting to avoid a collision with another motorist, Steven Welker drove his pickup truck into a concrete pole. For reasons that are not clear from the record, Welker was unable to recover from the other motorist for his damages. In addition, Welker was precluded from making an uninsured motorist claim against his own insurance company because, although he had automobile liability insurance for his pickup truck, he had expressly declined uninsured motorist coverage under that policy.
Having no recourse against the uninsured motorist or his own insurer, Welker turned instead to World Wide, his mother's insurer. The World Wide policy provided liability and uninsured motorist coverage to Welker's mother, as the named insured, and to her resident relatives. At the time of the accident Welker lived with his mother. The policy listed only the mother's vehicle as an insured vehicle and specifically excluded from coverage all vehicles owned by the named insured or resident relatives that were not listed in the policy. The relevant segments of the World Wide policy read as follows:
PERSONAL AUTO POLICY
DEFINITIONS
... .
"FAMILY MEMBER" means a person related to you by blood, marriage or adoption who is a resident of your household.
... .
PART A  LIABILITY COVERAGE
INSURING AGREEMENT
We will pay damages for bodily injury or property for which any covered person becomes legally responsible because of an auto accident... .
"Covered person" as used in this Part means:
1. You or any family member for the ownership, maintenance or use of any auto or trailer.
... .
EXCLUSIONS
... .
B. We do not provide Liability Coverage for the ownership, maintenance or use of:
... .
3. Any vehicle, other than your covered auto, which is:
a. owned by any family member; or
b. furnished or available for the regular use of any family member.
... .
PART C  UNINSURED MOTORIST COVERAGE
INSURING AGREEMENT
We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by a covered person; and
2. Caused by an accident.
... .
"Covered person" as used in this Part means:
1. You or any family member.
... .
EXCLUSIONS
A. We do not provide Uninsured Motorist Coverage for bodily injury sustained by any person:
1. While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy.
*48 Pursuant to his status as a resident relative, Welker claimed uninsured motorist benefits under the World Wide policy. World Wide denied benefits to Welker, citing the liability and uninsured motorist exclusions for accidents involving vehicles owned by family members but not insured under the policy. Welker then brought suit to compel World Wide to provide uninsured motorist benefits under the policy.
The trial court looked to the express terms of the policy and determined that, although Steven Welker was a resident relative at the time of the accident, the policy failed to provide either liability or uninsured motorist protection to Welker. Accordingly, the trial court entered summary judgment in favor of World Wide. The district court, relying principally on this Court's decision in Mullis, reversed. Under the district court's interpretation of Mullis, once a person is defined as an insured under an insurance policy for any measure of liability coverage, the insurer must also provide that person with uninsured motorist coverage without reservation as to the vehicle being driven at the time of the accident. The district court stated: "When an insurance company purports to provide basic liability coverage to the named insured and the insured's relatives, it cannot later exclude those relatives from uninsured motorist coverage." Welker, 601 So.2d at 574. There is no question that Welker was not entitled to liability coverage under his mother's policy for accidents involving Welker's truck. However, as the district court noted in its opinion, the policy did provide Welker with basic liability coverage, that is, liability coverage when Welker was operating his mother's vehicle or another vehicle not owned by him.
The issue in this case is whether an insurance company is required to provide uninsured motorist coverage to an insured for damages incurred in an accident involving a vehicle owned by the insured but not listed in the policy when the policy contains express provisions excluding coverage for both liability and uninsured motorist coverage in these circumstances. Welker, consistent with the view of the district court, argues that because he is generally insured under the World Wide policy, the exclusions set forth in his mother's policy cannot limit his entitlement to uninsured motorist coverage for his accident. In response, World Wide asserts that it was not obligated to provide uninsured motorist coverage to Welker for this accident involving his vehicle because it did not provide reciprocal liability coverage. World Wide further asserts that the cases relied on by the district court in its decision are distinguishable from the instant case because those cases involved automobile liability policies under which the resident family member was insured for liability for the accident in question. World Wide also argues that it is fundamentally unfair to expect World Wide to provide uninsured motorist coverage to Welker under a policy issued to his mother when he has expressly rejected such coverage under his own automobile policy and has thereby avoided paying the associated premium. We find merit in the arguments presented by World Wide.

Case Law on Uninsured Motorist Coverage
The principal decision of this Court on uninsured motorist coverage, and the decision upon which the district court primarily relied, is Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971). In Mullis, the minor son of Shelby Mullis was injured by an uninsured motorist while the son was operating a motorcycle owned by Mullis' wife. The policy issued to Mullis by State Farm provided liability and uninsured motorist coverage to Mullis and his resident relatives, but excluded coverage for accidents involving vehicles, such as the motorcycle, that were owned by Mullis or a resident relative and not insured under the policy. In Mullis, the issue was whether an insurer could exclude an insured from uninsured motorist coverage based on the vehicle the insured was operating at the time of the accident. The policy exclusion was found to be unenforceable under the particular facts of that case. In reaching that decision, the Mullis Court characterized the uninsured motorist coverage prescribed by statute[2] as *49 the reciprocal of the liability coverage mandated by chapter 324, Florida Statutes, the Financial Responsibility Law. The Mullis Court tied mandatory uninsured motorist coverage to liability coverage and determined that the scope and availability of uninsured motorist coverage must mirror the scope and availability of liability coverage in automobile policies issued in this state.
Recently, in Valiant Insurance Co. v. Webster, 567 So.2d 408 (Fla. 1990), we reaffirmed the principle that uninsured motorist coverage is the reciprocal of the liability coverage provided in an automobile insurance policy and clarified our holding in Mullis. In Valiant, the son of the policyholder was killed while riding as a passenger in a vehicle owned and operated by an uninsured motorist. Under the policy issued by Valiant Insurance Company, the father and resident relatives of his household were covered for liability and uninsured motorist protection. At the time of the accident the son and his mother were not living with the father; however, the mother, as personal representative of the son's estate, petitioned the trial court to compel her former husband's insurer to arbitrate the claim under the uninsured motorist provisions in the policy. We held that, because the decedent's son was not a resident relative of his father at the time of the accident, the liability coverage of his father would not apply to the accident, and neither the mother nor the father was entitled to claim uninsured motorist coverage for the son's death.
In Valiant we construed Mullis and noted that after the Mullis decision "the courts have consistently followed the principle that if the liability portions of an insurance policy would be applicable to a particular accident, the uninsured motorist provisions would likewise be applicable; whereas, if the liability provisions did not apply to a given accident, the uninsured motorist provisions of that policy would also not apply (except with respect to occupants of the insured automobile)." Valiant, 567 So.2d at 410 (emphasis added).
At least two district court of appeal decisions have denied coverage in factual circumstances similar to the situation in the instant case. In Bolin v. Massachusetts Bay Insurance Co., 518 So.2d 393 (Fla. 2d DCA 1987), James Bolin was injured by an uninsured motorist while Bolin was operating his own vehicle, and he attempted to collect uninsured motorist benefits under a policy issued to his wife. As in the instant case, that policy specifically excluded coverage whenever the husband was injured while operating his own vehicle. Bolin argued that, because he was insured under the basic liability coverage section of the policy, the exclusion was invalid as a matter of law. The court found that the husband was not an insured under the liability coverage provisions when he was operating his own vehicle and, therefore, "he could be excluded from uninsured motorist coverage." Bolin, 518 So.2d at 394.
In Government Employees Insurance Co. v. Wright, 543 So.2d 1320 (Fla. 4th DCA), review denied, 551 So.2d 464 (Fla. 1989), the Fourth District Court of Appeal held that a daughter living in her mother's household was not entitled to uninsured motorist coverage under the mother's insurance policy for injuries that the daughter received while driving her own automobile, which was not covered by the policy. The district court explained that, because the daughter was not covered under the liability provisions of the mother's policy, the "limitations on policy restrictions for [uninsured motorist] coverage contained in [Mullis] are not applicable," and concluded that the exclusion in the mother's policy was enforceable. Wright, 543 So.2d at 1321. The court, in explaining its decision, stated:
Wright [the daughter] contends that, as a resident relative in the Hull [the mother] household, she was entitled to liability coverage under the Hull policy and thus to [uninsured motorist] coverage. If the premise regarding liability coverage were correct, we could agree with Wright. However, that premise is erroneous because the liability provisions of the policy expressly excluded Wright in these circumstances because she was not injured in an "owned" or "non-owned" vehicle. Contrary to Wright's contention that Mullis prevents application of the exclusion present here, simply because Wright was a resident relative and, as such, would have *50 had coverage under the Hull policy, we hold Mullis to be inapposite. Whereas Wright would have been covered had she been injured while riding in Hull's automobile, the policy of insurance did not extend to all manner of unknown automobiles owned by Hull's relatives. Were it otherwise, the insurer could never determine its exposure in order to arrive at the appropriate premium to charge for Hull's policy.
Id. at 1321-22. The district court expressly found that Mullis did not apply.
On the other hand, the Fifth District Court of Appeal, in Nationwide Mutual Fire Insurance Co. v. Phillips, 609 So.2d 1385 (Fla. 5th DCA 1992), review granted, 620 So.2d 761 (Fla. 1993), held that the husband, who was injured by an uninsured motorist while operating his own vehicle, was entitled to uninsured motorist coverage under a policy issued to his wife. The district court reached this decision despite policy language that specifically excluded the husband from coverage while operating his own vehicle. The district court based its decision on Mullis and rejected the liability coverage analysis used in Wright and Bolin.

The Instant Case
In this case, Steven Welker seeks uninsured motorist coverage under his mother's policy for a vehicle owned by him and not covered by that policy. The mother's policy clearly does not cover Steven Welker or his truck for liability coverage for this accident. In Mullis, we said that uninsured motorist coverage "is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law." Mullis, 252 So.2d at 237-38. It is clear that there is no liability coverage under the mother's policy for Steven Welker's truck in these circumstances. The record reflects that, unlike the son in Mullis, Steven Welker was the owner of the automobile involved in the accident and that Welker accepted financial responsibility for his truck by obtaining liability coverage, but expressly decided, as the law allowed, to reject uninsured motorist coverage when he was operating his truck. We agree with World Wide that it would be unfair to allow Welker to collect uninsured motorist benefits from his mother's insurer under these circumstances. We find no legislative intent to establish a public policy that would require uninsured motorist coverage in this instance. We agree with Judge Downey's opinion in Wright that the analysis proposed by the district court would make it extremely difficult for the insurer to accurately determine its risk exposure.
We conclude that, pursuant to legislative intent, if the liability provisions in an automobile insurance policy would provide liability coverage to the insured for the particular accident giving rise to the insured's injury, that policy must also provide uninsured motorist coverage to that insured.[3] As a corollary, there is no requirement that the insurer provide uninsured motorist coverage to an insured for an accident involving a vehicle owned by the insured and not listed in the policy when the policy would not provide liability coverage to the insured had the insured been responsible for the particular accident. In the instant case, Welker was not covered for liability under his mother's policy for accidents involving his own vehicle and, consequently, World Wide was not obligated to provide Welker with uninsured motorist coverage.
Accordingly, we quash the district court's decision in the instant case; we approve the decisions of the Fourth District Court in Wright and the Second District Court in Bolin; and we disapprove the Fifth District Court's decision in Nationwide.
It is so ordered.
McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
GRIMES, J., concurs with an opinion.
BARKETT, C.J., dissents with an opinion.
*51 GRIMES, Justice, concurring.
It is not clear from the opinion in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971), whether the claimant had liability coverage under his father's policy while driving the motorcycle on which he was injured. The following language from the opinion suggests the possibility that this was deemed irrelevant at the time:
The public policy of the uninsured motorist statute (Section 627.0851) is to provide uniform and specific insurance benefits to members of the public to cover damages for bodily injury caused by the negligence of insolvent or uninsured motorists and such statutorily fixed and prescribed protection is not reducible by insurers' policy exclusions and exceptions any more than are the benefits provided for persons protected by automobile liability insurance secured in compliance with the Financial Responsibility Law.
Insurers or carriers writing automobile liability insurance and reciprocal uninsured motorist insurance are not permitted by law to insert provisions in the policies they issue that exclude or reduce the liability coverage prescribed by law for the class of persons insured thereunder who are legally entitled to recover damages from owners or operators of motor vehicles because of bodily injury.
Mullis, 252 So.2d at 233-34 (second and fourth emphases added).
In any event, later cases have explained that liability policies may properly exclude from coverage accidents involving automobiles owned by family members. Sheehan v. Lumbermens Mut. Casualty Co., 504 So.2d 776 (Fla. 4th DCA), review denied, 518 So.2d 1278 (Fla. 1987); South Carolina Ins. Co. v. Heuer, 402 So.2d 480 (Fla. 4th DCA 1981), review denied, 412 So.2d 465 (Fla. 1982); see Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla. 1978) (family household exclusion in liability policy upheld). In fact, no one in the instant case suggests that the exclusion of Welker from liability coverage while driving his own truck was invalid.
Section 627.727(1), Florida Statutes (1991), only requires insurers to offer uninsured motorist coverage to the extent of the liability coverage. Valiant Ins. Co. v. Webster, 567 So.2d 408 (Fla. 1990). Because there was no liability coverage for Welker, the statute did not prevent him from being excluded from uninsured motorist coverage. The conclusion we reach today is consistent with the rationale of Mullis that "uninsured motorist coverage ... is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage... ." Mullis, 252 So.2d at 237-38.
BARKETT, Chief Justice, dissenting.
I dissent because the majority opinion achieves a result contrary to law by ignoring the dictates of the seminal case on this issue, Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971). The majority's conclusion relies on the fact that Welker had been excluded from liability coverage under his mother's policy. That reliance ignores the fact that Mullis permitted recovery notwithstanding that the father's policy did not afford the son liability coverage when he drove the motorcycle in which he was injured.
In Mullis, as in this case, the plaintiff was injured while operating a vehicle "which was not covered by automobile liability insurance issued by the respondent insurance company." Id. at 231 (emphasis added).[4] In each case, the insurance company asserted that its policy had "excluded the uninsured motorist coverage claimed by plaintiffs." Id. In Mullis this Court declared the exclusion unlawful and held that "[plaintiff] would be covered thereby whenever he is injured while walking, or while riding in motor vehicles, or in public conveyances, including uninsured motor vehicles ... owned by a member of the first class of insureds." Id. at 238. Welker, like Mullis, was driving a motor vehicle "owned by a member of the first class *52 of insureds." Thus, Mullis requires an approval of the district court's decision in this case, which is factually indistinguishable from Mullis.
Since Mullis was decided, I do not believe that this Court has reconsidered its intent to enforce the legislative mandate providing uninsured motorist coverage. Nor is there any justification for such a major change now. The majority opinion does not identify any legislative enactment to justify curtailing the broad legislative policy enunciated in Mullis and provided in section 627.727(1), Florida Statutes (1991), [formerly section 627.0851, Florida Statutes (1969)]. Instead it inappropriately relies on unsupported dicta from Valiant Insurance Co. v. Webster, 567 So.2d 408 (Fla. 1990), to justify its reconsideration and heavy resection of Mullis.
The Valiant decision establishes that uninsured motorist coverage will be available only where "the person who suffered bodily injuries had uninsured motorist coverage." 567 So.2d at 410. This does not answer but begs the question of who is entitled to uninsured motorist coverage in the first place. Because the father claiming wrongful death benefits under his uninsured motorist policy did not suffer bodily injury, he was found ineligible for such coverage. Id. at 411. Neither Mullis nor Valiant makes uninsured motorist coverage contingent on whether the insurance policy provides liability coverage to an insured for the specific car named in a policy's declaration.[5] Dicta in Valiant providing that "if the liability provisions did not apply to a given accident, the uninsured motorist provisions of that policy would also not apply," 567 So.2d at 410, is as Justice Shaw explained, "unsupported by case law." Id. at 412 n. 3 (Shaw, C.J., dissenting). "Uninsured motorist protection does not inure to a particular motor vehicle... ." Coleman v. Florida Ins. Guar. Ass'n, Inc., 517 So.2d 686, 689 (Fla. 1988); see Mullis, 252 So.2d 229. The majority in Valiant focused its attention away from the individual and to the accident because it was concerned with whether the accident resulted in a recognized injury. Welker, in contrast to the father in Valiant, has suffered a recognized injury.
Finally, the majority adopts appellant's argument, which I find to be totally irrelevant and specious: to wit, that it would be "unfair to allow Welker to collect uninsured motorist benefits from his mother's insurer" because he "expressly rejected such coverage under his own automobile policy and has thereby avoided paying the associated premium." Majority op. at 48, 50. Even counsel for the insurance company at oral argument conceded that Welker's rejection of uninsured motorist coverage for his car is irrelevant to the issue before this Court. Indeed, Welker's mother carried both liability and uninsured motorist coverage for herself, as named insured, and for resident members of her family, which included Welker. By carrying liability coverage for his truck but refusing uninsured motorist benefits, Welker was, consistent with Mullis, ensuring that he would be insured while driving his pick-up truck if an accident occurred due to his own negligence (through his own policy) or due to the negligence of an uninsured motorist (through his mother's policy). Further, Welker may not have wished to pay either for uninsured motorist coverage for persons to whom he loaned his car or for stacked uninsured motorist coverage. See Coleman, 517 So.2d at 689; Florida Farm Bureau Casualty Co. v. Hurtado, 587 So.2d 1314, 1318-19 (Fla. 1991).
Insurance companies have every legal right to limit the situations for which they offer liability coverage. They also have the legal right to limit the persons for whom they will provide liability coverage. But, once an insurer provides liability coverage to an insured, it cannot then deprive that insured of uninsured motorist coverage by "the simple expedient of moving exclusionary language *53 into the definition of who is `insured' under the policy." Divine v. Prudential Property & Casualty Ins. Co., 614 So.2d 683, 683 (Fla. 5th DCA) review dismissed, 618 So.2d 1369 (Fla. 1993). "The statute is designed for the protection of injured persons, not for the benefit of insurance companies... ." Brown v. Progressive Mutual Ins. Co., 249 So.2d 429, 430 (Fla. 1971). To hold otherwise without clear legislative approval shifts protection to the insurance companies and away from the class of insureds for whom the uninsured motorist statute was designed. Were insurance companies to be given this prerogative absent clear legislative support, the policy announced in Mullis and in existence for the last twenty-two years would be effectively whittled away to little more than a woodchip.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[2] The statute at issue in Mullis was section 627.0851, Florida Statutes (1969), the predecessor to the current statute, section 627.727 (1991).
[3] Of course the insured may elect to expressly reject uninsured motorist coverage pursuant to section 627.727(1), Florida Statutes (1993).
[4] If the question of whether Richard Mullis had liability coverage at the time of his accident was relevant to the Court's analysis, it is perplexing that this operative fact was not discussed in the opinion. This strongly suggests that no liability coverage existed. At the very least it indicates that such coverage was irrelevant to this Court's decision.
[5] In relying on Valiant and various lower court decisions, the majority applies the term "reciprocal" in a manner inconsistent with that intended by this Court in Mullis. The majority mistakenly interprets that term to mean "the scope and availability of uninsured motorist coverage must mirror the scope and availability of liability coverage in automobile policies issued in this state." Majority op. at 49. Instead, use of the term "reciprocal" implicates the limits of the uninsured motorist coverage along with the condition that triggers its availability: namely "insuredness." 252 So.2d at 233. It does not reflect a concern for a "mirroring" of coverage.