654 So.2d 118 (1995)
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Petitioner,
v.
William J. DOUGLAS, Respondent.
No. 83242.
Supreme Court of Florida.
March 9, 1995.
Rehearing Denied May 4, 1995.
James K. Clark and Frances Fernandez Guasch of Clark, Sparkman, Robb & Nelson, Miami, for petitioner.
Christopher M. Cannon of Fazio, Dawson, DiSalvo, Cannon, Abers & Podrecca, Fort Lauderdale, for respondent.
WELLS, Justice.
We have for review Government Employees Insurance Co. v. Douglas, 627 So.2d 102 (Fla. 4th DCA 1993), in which the district court held that an automobile insurance policy issued by Government Employees Insurance *119 Company (GEICO) provided Douglas with uninsured motorist coverage because the insurer failed to comply with section 627.727(9), Florida Statutes (1987). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
The district court's decision was in accord with Nationwide Mutual Fire Insurance Co. v. Phillips, 609 So.2d 1385 (Fla. 5th DCA 1992), and Carbonell v. Automobile Insurance Co. of Hartford, 562 So.2d 437 (Fla. 3d DCA 1990). We, thereafter, quashed the Fifth District's decision in Nationwide, Nationwide Mut. Fire Ins. Co. v. Phillips, 640 So.2d 53 (Fla. 1994), based on our decision in World Wide Underwriters Insurance Co. v. Welker, 640 So.2d 46 (Fla. 1994), issued on the same date. We now recede from our decision quashing Nationwide because that decision failed to give effect to section 627.727(9), Florida Statutes (1987).
In 1971, this Court decided Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971). In that decision, we determined:
Richard Lamar Mullis is a member of the first class; as such he is covered by uninsured motorist liability protection issued pursuant to Section 627.0851 whenever or wherever bodily injury is inflicted upon him by the negligence of an uninsured motorist. He would be covered thereby whenever he is injured while walking, or while riding in motor vehicles, or in public conveyances, including uninsured motor vehicles ... owned by a member of the first class of insureds.
Id. at 238. Further, this Court held:
In sum, our holding is that uninsured motorist coverage prescribed by Section 627.0851 is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage .. . where an uninsured motorist negligently inflicts bodily injury or death upon a named insured, or any of his family relatives resident in his household, or any lawful occupants of the insured automobile covered in his automobile liability policy.
Id. at 237-38.
These two statements initiated a debate over uninsured motorist coverage which resulted in disparate decisions in the district courts, as well as disparate statements about Mullis by this Court. See Auto-Owners Ins. Co. v. Queen, 468 So.2d 498 (Fla. 5th DCA 1985); France v. Liberty Mut. Ins. Co., 380 So.2d 1155 (Fla. 3d DCA 1980); Coleman v. Florida Ins. Guaranty Ass'n, Inc., 517 So.2d 686, 689 (Fla. 1988).
The factual situation involved here also stirred debate. At the time of the accident in May 1989, Douglas had two vehicles insured by GEICO for liability and uninsured motorist (UM) coverage. A third vehicle, a truck which Douglas was occupying at the time of the accident, had previously been insured by GEICO under the same policy. In 1988, Douglas canceled the GEICO insurance coverage on the truck and obtained a personal injury protection (PIP) only policy with another insurance carrier. Douglas was rear-ended by an uninsured motorist while operating the truck and sought uninsured motorist benefits under his existing GEICO policy.
In applying Mullis to these facts, one line of cases would hold that no uninsured motorist coverage is available because no liability or uninsured motorist coverage was purchased for the particular vehicle involved in the accident. This theory prevailed in World Wide, wherein this court cited Valiant Insurance Co. v. Webster, 567 So.2d 408 (Fla. 1990), and stated:
In Valiant we construed Mullis and noted that after the Mullis decision "the courts have consistently followed the principle that if the liability portions of an insurance policy would be applicable to a particular accident, the uninsured motorist provisions would likewise be applicable; whereas, if the liability provisions did not apply to a given accident, the uninsured motorist provisions of that policy would also not apply (except with respect to occupants of the insured automobile)." Valiant, 567 So.2d at 410.
World Wide, 640 So.2d at 49. While the recitation from Valiant is accurate, we recede from the statement that courts have consistently tied uninsured motorist coverage *120 to the applicability of liability coverage for a particular accident.
Rather, our analysis is that the most consistent principle followed by courts interpreting Mullis was described in note 3 of Justice Shaw's dissenting opinion in Valiant:
The majority claims that Mullis v. State Farm Mutual Insurance Co., 252 So.2d 229 (Fla. 1971), and subsequent cases "follow the principle" that uninsured motorist (UM) coverage is unavailable if the corresponding liability coverage is inapplicable to a particular accident. This principle, however, is wholly unmentioned in Mullis and in each of the cases cited by the majority for support. Quite the contrary, all of these cases apply an analysis that focuses exclusively on the injured individual rather than the accident; they rule simply and clearly that UM coverage is unavailable if liability coverage is inapplicable to a particular individual. The majority, unsupported by caselaw, broadens the exclusion from the "individual" to the "accident," apparently in order to embrace the facts of the present case.

567 So.2d at 412 (emphasis in original removed) (emphasis added). Our analysis follows this Court's decision regarding Mullis in Coleman v. Florida Insurance Guaranty Ass'n, Inc., 517 So.2d 686 (Fla. 1988), which concerned the stacking of uninsured motorist coverage:
Uninsured motorist protection does not inure to a particular motor vehicle, but instead protects the named insured or insured members of his family against bodily injury inflicted by the negligence of any uninsured motorist under whatever conditions, locations, or circumstances any of such insureds happen to be in at the time... . Thus, the insured may be a pedestrian at the time of such injury, riding in motor vehicles of others or in public conveyances or occupying motor vehicles owned by but which are not "insured automobiles" of the named insured. Mullis, 252 So.2d at 233. It is this aspect of uninsured motorist coverage which gives rise to aggregation or "stacking" of uninsured motorist coverages.
Id. at 689 (citations omitted). This analysis likewise follows what this court said in respect to Mullis in Florida Farm Bureau Casualty Co. v. Hurtado, 587 So.2d 1314, 1316 (Fla. 1991):
The Court relied in part on its prior opinion in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971), which did not involve stacking, but did determine that under Florida law, an insurance company could not exclude a named insured from uninsured motorist coverage even though the named insured was not operating a vehicle insured under the policy.
We believe the legislature accepted as the prevailing Mullis theory the principle enunciated in Justice Shaw's footnote when it enacted the 1987 amendment to the uninsured motorist statute and, thereby, changed the state of the law. Pursuant to this amendment, which became section 627.727(9)(d), Florida Statutes (1987), insurers could issue motor vehicle liability insurance policies which contained limited uninsured motorist coverage. The limitation was described as follows:
The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.
§ 627.727(9)(d), Fla. Stat. (1987).
As recognized by the Fourth District Court of Appeal, to limit coverage validly, the insurer must satisfy the statutorily-mandated requirement of notice to the insured and obtain a knowing acceptance of the limited coverage. An insurer who provides coverage with the section 627.727(9)(d) limitation is also statutorily required to file revised, decreased premium rates for such policies.
It is our opinion that these requirements were the quid pro quo given by the legislature to insurers for the right to limit uninsured motorist coverage by this exclusion. As further recognized by the Fourth District in its opinion in this case, if the policy exclusion is valid despite noncompliance with the *121 statute, the provision of section 627.727(9)(d) is rendered meaningless.
Section 627.727(9)(d) was applicable in this instance and the insurer, GEICO, was found not to have complied with the statute. The Fourth District, therefore, quite correctly held that the insured was covered under the uninsured motorist provisions of the GEICO policy. We approve that decision.
It is so ordered.
SHAW, KOGAN and ANSTEAD, JJ., concur.
OVERTON, J., dissents with an opinion, in which GRIMES, C.J., and HARDING, J., concur.
OVERTON, Justice, dissenting.
The majority opinion permits the claimant automobile owner, William Douglas, to cheat on this State's clearly established policy of financial responsibility for motor vehicle owners by allowing him to protect himself with uninsured motorist coverage but provide no liability insurance protection to those who may be injured by his negligent driving. It allows William Douglas to protect himself without protecting others. As explained below, the majority opinion leads to a result which was never intended by the legislature. Further, it throws a monkey wrench into the State's policy of motor vehicle financial responsibility for motor vehicle owners.
It is important to understand the full facts of this case. Until the middle of 1988, William Douglas owned three motor vehicles which were all insured by Government Employees Insurance Company (GEICO) for both liability and uninsured motorist coverage. In 1988, Douglas decided not to renew his GEICO policy on one of the three vehicles, a 1977 Toyota pick-up truck. Instead, Douglas purchased a PIP-only policy for the pick-up with another insurance company and expressly rejected uninsured motorist coverage under that policy. Subsequently, in May of 1989 while driving this pick-up truck, Douglas had the accident which gives rise to this action. The basis of this action is Douglas's claim against GEICO for uninsured motorist benefits under the policies covering his two insured vehicles.
It is also important to understand how different this case is from our decision in Mullis. The majority chooses to rely very heavily on our decision in Mullis. In doing so, the majority chooses to ignore the important fact that the claimant in Mullis was a minor child who did not own the motorcycle he was operating and had not expressly rejected all types of insurance coverage on the vehicle he owned and was operating at the time of the accident.
The majority recognizes that there are two separate interpretations of section 627.727(9). Under the theory of the majority, there are two types of exclusions authorized by section 627.727(9), Florida Statutes (1993). The first authorizes a non-stacking provision for uninsured motorist coverage and the second authorizes a provision prohibiting uninsured motorist coverage under circumstances where an insured is injured while occupying a vehicle owned by the insured for which uninsured motorist coverage was not purchased. It appears that the majority believes these two exclusions are packaged for a 20% reduction in the premium and an appropriate affirmative choice made by the insured with notice that alternative coverage is available without such limitations. The majority theory assumes that, under legislation existing prior to 1987, William Douglas could affirmatively choose not to have any insurance coverage on his pickup truck, which he owned and was driving at the time of the accident, and still be covered by the uninsured motorist coverage on his other vehicles. In my view, it is totally illogical to say that the legislative intent of chapter 627 was to recognize that a motor vehicle owner could protect himself with insurance coverage without protecting others. Nothing in the legislative history suggests such an intent.
I reject the majority theory. To me, the single underlying purpose of section 627.727(9) was to deal with the stacking of uninsured motorist coverage and, specifically, to authorize insurance companies to provide non-stacked policies (or "anti-stacked" policies in the legislative vernacular) of uninsured motorist coverage. These non-stacking *122 alternatives were intended to result in a savings to the insurance-buying public of at least 20% on the cost of insurance premiums. The sole purpose of this subsection was to provide non-stacking alternatives for policies that already provided liability insurance coverage for a motor vehicle.
In my view, all that subparagraph (d) of section 627.727(9) does is recognize that uninsured motorist coverage is reciprocal or mutual equivalent of automobile liability coverage and that an insured such as Douglas who is injured while occupying a vehicle owned by him for which uninsured motorist coverage is not purchased is not entitled to coverage whether it is stacked or non-stacked. When subsection 627.727(9)[1] is read in its entirety, it is absolutely clear that this subsection was written solely to allow non-stacked uninsured motorist coverage. The non-stacking aspect and the mandated 20% reduction for the uninsured motorist premium was its sole intent and purpose.
The history of the statute is set out in the legislative analysis summaries attached to this dissent and designated appendices A and B. These summaries explain that the legislature enacted a non-stacking statute in 1976, section 627.4132, that prohibited stacking and applied to all aspects of motor vehicle coverage but was particularly directed to uninsured motorist coverage. This statute was amended in 1980 to exempt the uninsured motorist statutes from the non-stacking provision. This had the effect of prohibiting non-stacking provisions for uninsured motorist protection. Then, in 1987, section 627.727(9) was enacted to allow insurance companies to offer their customers policies that contained a non-stacking uninsured motorist coverage provision provided that (1) the insurance customers expressly asked for this non-stacking provision and (2) the insurance customer would in return receive a premium reduction for uninsured motorist coverage of at least 20%. The statutory provisions in subparagraphs (b), (c), (d), and (e) of subsection 627.727(9) set out the various coverage alternatives applicable to an insured who chooses the non-stacked option. Subparagraph (b) provides that, if the injured person is occupying an expressly covered vehicle at the time of the accident, the uninsured motorist coverage is the coverage on that one particular vehicle. Subparagraph (c) provides that, if the injured person is occupying a non-owned, non-insured vehicle at the time of the accident, the uninsured motorist coverage is the highest limits of any one vehicle for which that person is insured. Subparagraph (d) acknowledges the existing law by explaining that uninsured motorist coverage is not available to a person such as Douglas when he is occupying a vehicle owned by him for which he chose not to obtain insurance. Subparagraph (e) provides that, if the injured person is not occupying a vehicle at the time of the injury, the uninsured motorist coverage is the coverage provided *123 under any one vehicle for which the person is covered. The concluding paragraph prescribes the notice and type of form that must be used in a non-stacked coverage provision and states there must be at least a 20% reduction in the premium charged for the optional non-stacked uninsured motorist coverage. To say that subparagraph (d) has a purpose other than to explain the coverage for a vehicle the owner chose not to insure is plain wrong. It is contrary to a logical reading of 627.727(9) in its entirety and contrary to the legislative purpose of this statute as set forth in the house and senate legislative analyses cited earlier. It is important to emphasize that subparagraph (d) was only one of five identified subparagraphs in section 627.727(9). I emphasize that, if you accept the majority's theory, subparagraphs (a), (b), (c), and (e) apply to the non-stacking exclusion, while subparagraph (d), sandwiched in between (c) and (e), applies to a totally different exclusion for vehicle owners who chose not to carry insurance on their vehicles. A reading of the staff analyses prepared by both the senate and the house fully supports the conclusion that 627.727(9) is a statute authorizing only the option of non-stacked uninsured motorist coverage and nothing more.
I believe that the concluding paragraph in Justice Grimes' concurring opinion in World Wide Underwriters Insurance Co. v. Welker, 640 So.2d 46, 51 (Fla. 1994) (Grimes, J., concurring), succinctly and articulately explains the intent of the legislature in enacting the uninsured motorist provisions and explains our prior decisions in Valiant Insurance Co. v. Webster, 567 So.2d 408 (Fla. 1990), and Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla. 1971). He stated:
Section 627.717(1), Florida Statutes (1991), only requires insurers to offer uninsured motorist coverage to the extent of the liability coverage. Valiant Ins. Co. v. Webster, 567 So.2d 408 (Fla. 1990). Because there was no liability coverage for Welker, the statute did not prevent him from being excluded from uninsured motorist coverage. The conclusion we reach today is consistent with the rationale of Mullis that "uninsured motorist coverage ... is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage... ." Mullis, 252 So.2d at 237-38.
In addition, as Judge Downey explained in Government Employees Insurance Co. v. Wright, 543 So.2d 1320, 1322 (Fla. 4th DCA), review denied, 551 So.2d 464 (Fla. 1989), there is no way insurance companies are going to know what vehicles their uninsured motorist provisions will have to cover under the majority's interpretation and, therefore they will have no real means to assess the risk. The result is that the rest of us who do obtain liability coverage will pay more in our uninsured motorist coverage to assure coverage for those vehicle owners who do not obtain liability coverage for the vehicle they own because they are personally protected under another policy under which they are an insured.
As explained by Justice Grimes, this conclusion is justified because chapter 627 requires that insurers offer uninsured motorist coverage to vehicle owners only and only to the extent of liability coverage and, because Douglas had not obtained liability coverage for the truck he owned and operated at the time of the accident, he was properly excluded from the uninsured motorist provisions of the statute. I do not find that the uninsured motorist statutory provisions in any way allow an owner to obtain uninsured motorist protection for himself without first obtaining liability protection for others. It is clear to me that chapter 627 was intended to provide the reciprocal or mutual equivalent of automobile liability coverage. The majority view rejects this theory, and its view results in an interpretation of the statute that is contrary to this State's strong policy of financial responsibility for owners of motor vehicles.
The statutes and case law of this State reflect an intent that owners of motor vehicles be financially responsible for accidents that result from the operation of their vehicles. In section 324.011, Florida Statutes (1993), the legislature set out the following statement of public policy:
It is the intent of this chapter to recognize the existing privilege to own or operate a *124 motor vehicle on the public streets and highways of this state when such vehicles are used with due consideration for others and their property, and to promote safety and provide financial security requirements for such owners or operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle.

(Emphasis added.) This same policy of financial responsibility is present in the uninsured motorist statutes found in chapter 627 where provisions from chapter 324 are referenced and interrelated. In addition to these legislative enactments, this Court has made clear its policy of owner financial responsibility by adopting the Dangerous Instrumentality Doctrine for motor vehicles. See, e.g., Ingram v. Pettit, 340 So.2d 922, 924-25 (Fla. 1976); Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 460, 86 So. 629, 636 (1920). Regrettably, the policy of financial responsibility established by the legislature and this Court for owners of motor vehicles is substantially modified by the majority's illogical construction of section 627.727(9).
Finally, I am concerned that this decision, which effectively overrules Valiant, World Wide, Nationwide, and a number of district court decisions that we have previously approved, sends a message that any decision of this Court may be overturned without any change of circumstances other than a change in the membership of this Court. No new arguments have been presented to the Court and, as the majority notes, the theory it adopts was argued and rejected in previous cases, as illustrated by the majority's reliance on the dissent of Justice Shaw in Valiant. Such a practice is totally contrary to basic rules of stare decisis. The majority in this case is apparently following the philosophy of Justice Scalia and has determined that they are not bound by prior decisions of the Court as precedent and are not obligated to exercise judicial restraint as mandated by the doctrine of stare decisis to assure stability in the law. See Perez v. State, 620 So.2d 1256, 1258 (Fla. 1993) (Overton, J., concurring) (how courts may properly overrule prior decisions and noting the United States Supreme Court's analysis of stare decisis in Planned Parenthood v. Casey, ___ U.S. ___, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). The message sent by the majority opinion will, in my view, adversely affect the stability of the law in this state.
In conclusion, I find that the majority incorrectly and erroneously interprets the intent and purpose of subsection 627.727(9), and I suggest that the legislature immediately address this issue by explaining in clear statutory terms that a vehicle owner has never been authorized by statutory law to protect himself with uninsured motorist coverage without first obtaining liability coverage to protect others.

ATTACHMENT

APPENDIX A
The House of Representatives Committee on Insurance Staff Analysis states, in pertinent part, as follows:
The bill provides that insurance policies may contain a provision that coverage on two or more vehicles will not be added together. This provision will apply to uninsured and underinsured motor vehicle coverage.
The present law, s. 627.4132, is the so-called "anti-stacking law." It prohibits insurance coverage on two or more motor vehicles from being "stacked" or added together. This law was originally enacted by the Legislature in 1976. The statute was enacted in response to case law that allowed uninsured motorist coverage on two or more vehicles to be combined if an insured was covered under those policies and was involved in an accident involving any one of the vehicles covered. In 1980, the statute was amended to exempt uninsured motorist coverage from the application of the statute. The exemption had the effect of practically repealing the statute since it was originally aimed at uninsured motorist coverage.
The purpose of uninsured motorist coverage is to allow a person to obtain insurance to protect himself from being injured by an uninsured person. Underinsured motorist coverage only applies to situations where *125 the insured's coverage exceeds the amount of liability coverage held by the tort feasor.
The bill will allow motor vehicle insurance policies to contain a specific provision that uninsured and underinsured coverage will not be added together to determine the limit of coverage for any one accident. The uninsured motorist coverage available to an insured will be the coverage applicable to the vehicle in the accident. However, if an injured person is occupying a vehicle which is not owned by him or by a family member riding with him, he will be entitled to only the uninsured motorist coverage for any vehicle as to which he is a named insured or insured family member. Uninsured motorist coverage will be off-set by any coverage available to the injured person under a policy covering the vehicle in which he was injured. Uninsured motorist coverage will not apply to any vehicle for which it is not specifically purchased.
If an injured person is not occupying a motor vehicle, he can select the limit of uninsured motorist coverage for any vehicle covered by a policy for which he is insured.
The bill also requires the insurer to advise the named insured of his right to purchase uninsured motorist coverage which can be "stacked." The insurer must advise the insured on a form approved by the department in connection with the selection or rejection of uninsured motorist coverage. The insured will have the right to purchase an endorsement deleting the "anti-stacking" policy provision. To obtain the "stacked" coverage the insured must make a written request and pay an additional premium.
Staff of Fla.H.R.Comm. on Ins., HB 1029 (1987) Staff Analysis 1-2 (final July 1, 1987) (on file at the Florida State Archives).

APPENDIX B
The summary of the Senate Staff Analysis and Economic Impact Statement reads as follows:
A. Present Situation:
Section 627.4132, F.S., is the so-called "anti-stacking law." It prohibits insurance coverage on two or more motor vehicles from being "stacked" or added together. This law was originally enacted by the Legislature in 1976. The statute was enacted in response to case law that allowed uninsured motorist coverage on two or more vehicles to be combined if an insured was covered under those policies and was involved in an accident involving any one of the vehicles covered. In 1980, the statute was amended to exempt uninsured motorist (UM) coverage from the application of the statute. The exemption had the effect of practically repealing the statute since it was originally aimed at uninsured motorist coverage. Thus, an insured with two automobiles who has purchased UM coverage with limits of $100,000 per person and $200,000 per accident (100/200) is actually afforded limits of 200/400.
The stacking rule means that such stacked limits apply to what the courts call "Class I insureds." Thus, the named insured and relatives residing with the named insured, wherever injured and under whatever circumstances, and others who are insureds under the named insured's UM coverage (those injured while occupying the named insured's vehicle) are "Class II insureds" and subject to the limits applicable to the automobile in which the accident occurred. However, case law exists which holds that stacking does not apply for the owners of a closely held corporation or to an employee, where a corporation was the named insured.
The purpose of uninsured motorist coverage is to allow a person to obtain insurance to protect himself from being injured by an uninsured person. Underinsured motorist coverage only applies to situations where the insured's coverage exceeds the amount of liability coverage held by the tortfeasor. The "stacking" term has been inappropriately used by many people when different policies issued to different types of insureds both apply. A vehicle owner with UM, when a passenger in the vehicle of another motorist with UM, is entitled to *126 coverage under both policies. Such is in accordance with each policy's terms; not "stacking" as ordered by the courts.
B. Effect of Proposed Changes:
Section 627.727, F.S., is amended to allow insurers to offer policies of uninsured motorist coverage containing specific policy provisions that uninsured and underinsured coverage will not be added together to determine the limit of coverage for any one accident. The uninsured motorist coverage available to an insured will be the coverage applicable to the vehicle in the accident. However, if an injured person is occupying a vehicle which is not owned by him or by a family member riding with him, he will be entitled to the highest limits of uninsured motorist coverage for any vehicle as to which he is a named insured or insured family member. Uninsured motorist coverage will not apply to any vehicle for which such insurance is not specifically purchased.
If an injured person is not occupying a motor vehicle, he can select the limit of uninsured motorist coverage for any vehicle covered by a policy for which he is insured.
In addition, the bill provides that in connection with the offer to sell non-stacked uninsured motorist coverage, that the insurer shall inform the named insured, applicant or lessee, on a form approved by the department, of the limitations imposed under s. 627.727, F.S., as amended. If the named insured, applicant, or lessee signs such form, it is conclusively presumed that there was an informed, knowing acceptance of such limitations. Once the named insured, applicant, or lessee has initially accepted such limitations, such acceptance shall apply to any policy which renews, extends, charges, supersedes, or replaces an existing policy unless the named insured requests deletion of such limitations and pays the appropriate premium for such coverage.
Finally, the bill provides that any insurer providing coverage including non-stacked uninsured motorist coverage shall file revised premium rates with the department for such coverage prior to providing the coverage. The revised rates shall reflect the anticipated reduction in loss costs attributable to non-stacked coverage and shall reflect a reduction in the premium of at least 20 percent. The filing shall not increase the rates for coverage previously in effect (stacked coverage) and such rates shall remain in effect until the insurer demonstrates the need for a change in uninsured motorist rates pursuant to s. 627.0651, F.S. (Making and use of rates for motor vehicle insurance).
Staff of Fla.S.Comm. on Com., CS/SB 829 (1987) Staff Analysis 1-2 (May 25, 1987) (on file at the Florida State Archives).
GRIMES, C.J., and HARDING, J., concur.
NOTES
[1] Subsection 627.727(9) reads as follows:

(9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the department, establishing that if the insured accepts this offer:
(a) The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident, except as provided in paragraph (c).
(b) If at the time of the accident the injured person is occupying a motor vehicle, the uninsured motorist coverage available to him is the coverage available as to that motor vehicle.
(c) If the injured person is occupying a motor vehicle which is not owned by him or by a family member residing with him, he is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which he is a named insured or insured family member. Such coverage shall be excess over the coverage on the vehicle he is occupying.
(d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.
(e) If, at the time of the accident the injured person is not occupying a motor vehicle, he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which he is insured as a named insured or as an insured resident of the named insured's household.
In connection with the offer authorized by this subsection, insurers shall inform the named insured, applicant, or lessee, on a form approved by the department, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations.