670 So.2d 997 (1996)
Stanley MARTIN and Adrienne Martin, individually, and as Co-Personal Representatives of the Estate of Brian Martin, Deceased, Appellants,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellee.
No. 94-04020.
District Court of Appeal of Florida, Second District.
February 7, 1996.
Rehearing Denied March 29, 1996.
*998 Anthony T. Martino of Clark, Charlton & Martino, P.A., Tampa, for Appellants.
Alan J. Landerman and Pamela Mark Burke of Parker, Goodwin, McGuire, Burke, Landerman & Dabold, P.A., Orlando, for Appellee.
Dock A. Blanchard of Blanchard, Merriam, Abel & Kirkland, P.A., Ocala, for Amicus Curiae Academy of Florida Trial Lawyers.
ALTENBERND, Judge.
The Estate of Brian Martin (the Estate) appeals a summary judgment denying its claim for uninsured motorist benefits on a specialty insurance policy issued by St. Paul Fire and Marine Insurance Company (St. Paul), insuring an antique automobile. Brian Martin died in an accident that did not involve the antique motor vehicle. The Estate claims that Brian Martin was a class I insured because his father is the named insured on this policy. We hold that the requirements of section 627.727, Florida Statutes (Supp.1992), and the legislative policies interpreted in Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla.1971), do not require a specialty insurance policy covering only an antique automobile with restricted highway usage to provide uninsured motorist coverage for accidents not involving the antique.
Brian Martin died as a result of injuries sustained in an automobile accident that occurred on July 12, 1993. He was a passenger in the back of a pick-up truck owned by Marshall Abrams and driven by Thomas Anglin, Jr. Allegedly, the accident was entirely the fault of Mr. Anglin. The insurance company that provided liability coverage for Mr. Abrams' truck has paid its limits of $15,000.
At the time of the accident, Brian Martin was fourteen years old and lived with his parents, Stanley and Adrienne Martin, in Brandon, Florida. If the Martins had a typical Florida no-fault automobile insurance policy on a car used by the family for regular transportation, that policy is not disclosed in the record. However, Mr. Martin did own a 1963 Ford Thunderbird that was covered by the antique automobile insurance policy issued by St. Paul.[1]
Several aspects of St. Paul's insurance policy are important to our decision in this case. The policy is entitled "Antique Automobile Insurance Policy." The declarations page reveals that it insured only the Thunderbird and provides $300,000 in liability coverage for each accident, $300,000 in uninsured motorist coverage, collision coverage, and personal injury protection. The total premium for the one-year policy, effective June 15, 1993, is $181. St. Paul charged $16 for the uninsured motorist coverage. Most of the premium, $140, is allocated to collision coverage on the antique vehicle. Obviously, the premium charged for liability and uninsured motorist coverage on this policy is a small percentage of the customary charge for comparable coverage on a standard family automobile policy.
St. Paul charges a reduced premium for this policy because the coverage is very limited. Endorsements 31689 and 31716 require that the insured auto be a classic car or a car 25 years or older. The auto must be maintained primarily for use in antique car club activities and only occasionally used for other purposes. The car cannot be driven to and from work or school, and its annual mileage *999 may not exceed 2500 miles. The liability coverage protects the named insured, family members, and other persons actually using the antique auto. Unlike a typical family automobile policy, this specialty policy provides no coverage if the named insured or a family member is driving another automobile. The uninsured motorist coverage is provided in endorsement 50424. This endorsement also limits coverage only to claims of insureds who actually occupy the insured antique auto at the time of the accident. Thus, St. Paul clearly intended for this policy to provide liability coverage and uninsured motorist coverage for 2500 miles of usage of the specific antique car described in the policy while being driven primarily in parades and club outings. In light of the reduced premium, the title of the policy, its coverages, and the correspondence sent to Mr. Martin with this policy, he cannot suggest that St. Paul misled him concerning the special nature of this policy.
After Brian Martin died, his Estate filed this action seeking underinsured motorist coverage from St. Paul. The Estate argued that Brian had been a resident relative in his father's home and that, in light of the public policies announced in Mullis, St. Paul was not authorized to issue a policy excluding coverage to a class I insured for such an accident. The trial court rejected this argument, and the Estate filed this appeal.
This issue appears to be a matter of first impression in Florida. At least four other states have considered this issue and have reached varying results. In Louisiana, the restrictive language of a comparable antique automobile insurance policy was enforced albeit over a dissent. See Sanner v. Zurich-American Ins. Co., 657 So.2d 252 (La.Ct. App.), writ denied, 660 So.2d 852 (La.1995). In Pennsylvania, an earlier edition of this insurance policy was enforced after the court determined that such a specialty policy was neither contrary to public policy nor in derogation of the insured's statutory rights. The majority opinion emphasized that the intent of the insurance policy and the reasonable expectations of the insured would not require typical uninsured motorist coverage in such a policy. See St. Paul Mercury Ins. Co. v. Corbett, 428 Pa.Super. 54, 630 A.2d 28 (1993). A dissent by four of the nine judges on that court relies heavily on language that no longer appears in St. Paul's policy.
The Supreme Court of Wisconsin refused to enforce such restrictions in an insurance policy, holding that it violated the applicable statutory requirements. See St. Paul Mercury Ins. Co. v. Zastrow, 166 Wis.2d 423, 480 N.W.2d 8 (1992). Three judges on that court dissented, arguing that a specialty policy on an antique automobile need not fulfill the statutory requirements for a standard policy. Finally, in Minnesota, an appellate court ruled that the policy did provide coverage to a class I insured for accidents not involving the insured antique auto. That court, however, allowed the antique automobile policy to receive favorable treatment on the issue of apportionment of the amount of the claim between two insurance policies. See State Farm Mut. Auto. Ins. Co. v. Zurich Ins. Co., 439 N.W.2d 751 (Minn.Ct.App.1989).[2]
In reaching a decision in this case, we have experienced the same difficulties that troubled the courts in the other four states. There are strong public policies favoring statutorily required UM coverage, and thus an insurance company's right to restrict such coverage is limited. Nevertheless, we conclude that the legislature has never intended to mandate class I, family-style uninsured motorist coverage in such a specialty policy. Instead, we are convinced that the strong public policies encouraging uninsured motorist coverage will be better served if we permit the coverage limitations in this specialty policy.
Section 627.727(1), Florida Statutes (Supp. 1992), provides:
No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any *1000 specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.
There is no dispute that the antique automobile policy is a policy of "motor vehicle liability insurance" delivered in Florida on a specifically described Florida automobile. Although "motor vehicle" is not defined in section 627.727, it is undisputed that this 1963 Thunderbird is a "private passenger motor vehicle" for purposes of the Florida Motor Vehicle No-Fault Law. § 627.732(1), Fla.Stat. (1991). This car is not quite old enough to qualify as a "horseless carriage," and even such antiques are generally regarded as motor vehicles. § 320.086, Fla. Stat. (1991). Thus, St. Paul cannot avoid the uninsured motorist statute by arguing that the antique auto is not a motor vehicle due to its restricted usage.
Likewise, section 627.727(9) permits insurance companies to offer policies with specific limitations on the uninsured motorist coverage. The limitation in this policy is more restrictive than any of the options in subsection (9). Accordingly, that subsection does not support St. Paul's argument.
We conclude that St. Paul's position is supported by two alternative theories, the second of which is more convincing. First, there are a few cases authorizing the exclusion of uninsured motorist coverage if the claimant is not an insured for liability purposes when occupying the vehicle involved in the accident. See, e.g., Government Employees Ins. Co. v. Wright, 543 So.2d 1320 (Fla. 4th DCA), review denied, 551 So.2d 464 (Fla. 1988); Bolin v. Massachusetts Bay Ins. Co., 518 So.2d 393 (Fla. 2d DCA 1987). Initially, the supreme court accepted the reasoning of these cases. World Wide Underwriters Ins. Co. v. Welker, 640 So.2d 46 (Fla.1994); Nationwide Mut. Fire Ins. Co. v. Phillips, 640 So.2d 53 (Fla.1994). Recently, the supreme court receded from Welker and Phillips, but suggested in dicta that an insurance policy may validly limit uninsured motorist coverage if the "liability coverage is inapplicable to a particular individual." Government Employees Ins. Co. v. Douglas, 654 So.2d 118, 120 (Fla.1995) (quoting Valiant Ins. Co. v. Webster, 567 So.2d 408, 412 (Fla.1990) (Shaw, J., dissenting)).
In this case, the liability coverage would not apply to this fourteen-year-old boy if, instead of being a passenger, he were driving the truck at the time of this accident. Indeed, the liability coverage would not protect Mr. Martin, the named insured, if he had been driving this truck. Thus, if the reasoning of Bolin survives the decision in Douglas, we could affirm the trial court on this rationale. This rationale is similar to that employed by the Louisiana court in Sanner. See 657 So.2d at 255.
We do not rely exclusively on this rationale for two reasons. First, it is not entirely clear that the supreme court intended to approve the Bolin reasoning in Douglas. In Mullis, the young man who received uninsured motorist coverage was not insured on the family's automobile policy for liability coverage when operating the motorcycle involved in that accident. Thus, this reading of Douglas seems inconsistent with Mullis.
Second, making the availability of uninsured motorist coverage dependent on liability coverage seems somewhat arbitrary and unrelated to the public policies promoted by uninsured motorist coverage. See Bulone v. United Servs. Auto. Ass'n, 660 So.2d 399, 405 n. 10 (Fla. 2d DCA 1995). A family may well have a great need for uninsured motorist coverage for family members who have no need to be included within the definition of insured for liability purposes. See, e.g., Bolin, 518 So.2d 393 (involved claims by persons who had elected not to purchase insurance on all of their cars). These concerns are better remedied by the various policy options offered by the legislature in section 627.727(9) than by judicial approval of broader exclusions based on the definition of "insured" in the separate section of the policy providing liability coverage.
As a result, we also rely upon an alternative analysis for our result. Section *1001 627.727(1) does not specifically mandate coverage for claims unconnected with the insured vehicle. The requirement that class I insureds receive coverage for claims when they are pedestrians or occupants of other vehicles is an interpretation of section 627.727 announced in Mullis. In Mullis, the supreme court analyzed a standard family automobile policy before the advent of no-fault insurance and during the period in which uninsured motorist coverage was expressly tied to the financial responsibility statute. See § 627.0851, Fla.Stat. (1965). In that context, the court concluded that a policy issued to the tortfeasor to comply with financial responsibility would have provided liability insurance benefiting the injured motorcyclist as a claimant. Moreover, because a policy that satisfied financial responsibility was required to cover the family members for purposes of liability coverage, the court concluded that the legislature intended to protect the same class of insureds from uninsured motorists. Thus, in Mullis, the court used the similarity between that liability coverage required by the financial responsibility statute and that uninsured motorist coverage required by another statute to mandate certain coverage, rather than to limit it. In so doing, it equated uninsured motorist coverage with "family protection." 252 So.2d at 233.
In contrast to the era of Mullis, an automobile now insured under a Florida no-fault policy is generally not a "motor vehicle" for purposes of financial responsibility. § 324.021(1), Fla.Stat. (1993). This antique automobile policy does not provide the minimum coverage required for Mr. Martin in a policy issued for financial responsibility purposes. § 324.151(1)(b), Fla.Stat. (1993). It is not legally required to provide that coverage because the policy does provide the necessary no-fault coverage. Section 627.727 no longer mandates that the uninsured motorist coverage provide a level of protection equivalent to the protection that would exist if the tortfeasor had a policy complying with financial responsibility. Thus, tying uninsured motorist coverage to financial responsibility coverage is no longer a compelling analysis.
On the other hand, the concept that class I uninsured motorist coverage is "family coverage" remains viable. See Douglas, 654 So.2d 118; Coleman v. Florida Ins. Guaranty Ass'n, 517 So.2d 686 (Fla.1988). The broad coverage mandated for class I insureds in Mullis is still mandated in all policies insuring motor vehicles that are family automobiles. But such broad uninsured motorist coverage has never been legislatively required for motorcycles or other specialty recreational vehicles. The antique car insured in this case is a hobby, not a means of family transportation. Accordingly, we do not conclude that the legislative policies concerning uninsured motorist coverage are violated by the specialty policy St. Paul issued in this case.
If we were to reach the opposite result, three developments would assuredly occur. First, the insurance companies providing this coverage to antique car enthusiasts would be required to dramatically increase the cost of the coverage. Second, this dramatic increase in premiums would cause many owners to completely reject uninsured motorist coverage on their antiques. Thus, by claiming to promote the legislative policy in favor of uninsured motorist coverage, we would actually cause a reduction in the number of motor vehicles insured with this coverage for their class I and class II occupants. Finally, by requiring expensive coverage that would duplicate true family automobile coverage in most instances, we would force the legislature to amend this statute on yet another occasion in its never-ending efforts to provide cost-effective UM coverage for Florida residents. These developments seem to be clear proof that the legislature did not intend this result. Accordingly, we approve this limitation in a policy covering only an antique automobile with restricted highway use.
Affirmed.
SCHOONOVER, A.C.J., and FULMER, J., concur.
NOTES
[1] The policy in the record appears to be issued by St. Paul Mercury Insurance Company, which is one of the other members of the St. Paul Companies. Since St. Paul Fire and Marine Insurance Company has not objected to being named as the defendant in this case, we assume that this misnomer is not significant.
[2] We note with some disappointment that neither the parties nor amicus included these cases in their citations. This is true despite the fact that St. Paul was a party in two of the cases. On an issue of first impression, a discussion of out-of-state cases is frequently quite helpful. This court located these cases without great difficulty during computer-assisted research.