# Supreme Court of Florida

_____

No. SC18-320
_____

**AMERICAN SOUTHERN HOME INSURANCE COMPANY,**
Petitioner,

vs.

**LOUIS PHILIP LENTINI, etc.,**
Respondent.

December 19, 2019

POLSTON, J.

American Southern Home Insurance Company seeks review of the decision

of the Fifth District Court of Appeal in *Lentini v. American Southern Home*

*Insurance Co.*, 233 So. 3d 1258 (Fla. 5th DCA 2017), which was certified to be in

direct conflict with the decision of the Second District Court of Appeal in *Martin v.*

*St. Paul Fire & Marine Insurance Co.*, 670 So. 2d 997 (Fla. 2d DCA 1996).[1]  The

issue before this Court is whether an insurer that issues a reduced premium

collector vehicle policy may limit uninsured motorist coverage under that specialty

_____

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

policy to accidents involving the occupancy or use of the collector vehicle.[2] As explained below, we hold that the requirements of section 627.727, Florida Statutes (2015), prohibit the limitations placed on uninsured motorist coverage in the collector vehicle policy at issue. Therefore, we approve the decision of the Fifth District in *Lentini* and disapprove the decision of the Second District in *Martin*.

## BACKGROUND

This case arises out of an automobile accident in which Michael Lentini was operating his motorcycle when involved in a fatal accident. Lentini's estate sought uninsured motorist benefits under his American Southern Home Insurance Company ("American Southern") policy issued on a 1992 Corvette collector vehicle. The Corvette policy contains a provision that limits uninsured motorist coverage to accidents involving the covered collector vehicle.

After American Southern denied coverage, the estate sued. The trial court, relying on the conclusion of the Second District in *Martin*, entered summary judgment in favor of American Southern. On appeal, the estate argued that *Martin* was erroneously decided and that American Southern limited Lentini's uninsured

---

2. Interpretation of insurance policies and statutes is subject to de novo review. *See U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (policy interpretation); *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005) (statutory interpretation).

motorist coverage impermissibly under section 627.727. The Fifth District reversed the trial court's grant of summary judgment, concluding that the collector vehicle policy must and did not comply with the statutory mandates of section 627.727(9).

## ANALYSIS

American Southern contends that section 627.727 does not apply to specialty insurance policies such as the Corvette policy at issue. We disagree.

Section 626.727 governs "motor vehicle insurance; uninsured and underinsured vehicle coverage; [and] insolvent insurer protection." It provides as follows:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.

§ 627.727(1), Fla. Stat. (2015). "[S]ection 627.727(9) provides that an insurer may offer non-stacking coverage provided that the insurer informs the insured of the limitations of such coverage and the insured executes an approved form expressly electing non-stacking coverage." *Travelers Commercial Ins. Co. v. Harrington*,

154 So. 3d 1106, 1113 (Fla. 2014).  Specifically, subsection (9) permits insurers to

offer policies with limitations on uninsured motorist coverage as follows:

> (9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:
>
> (a)  The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident, except as provided in paragraph (c).
>
> (b)  If at the time of the accident the injured person is occupying a motor vehicle, the uninsured motorist coverage available to her or him is the coverage available as to that motor vehicle.
>
> (c)  If the injured person is occupying a motor vehicle which is not owned by her or him or by a family member residing with her or him, the injured person is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which she or he is a named insured or insured family member.  Such coverage shall be excess over the coverage on the vehicle the injured person is occupying.
>
> (d)  The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.
>
> (e)  If, at the time of the accident the injured person is not occupying a motor vehicle, she or he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which she or he is insured as a named insured or as an insured resident of the named insured's household.

§ 627.727, Fla. Stat. (2015).

As identified by the Fifth District in *Lentini*, "[n]othing in section 627.727

excludes collector or antique vehicle insurance policies from its application.  To

the contrary, section 627.727 explicitly states that '*[n]o motor vehicle liability*

- 4 -

*insurance policy* . . . shall be delivered or issued for delivery in this state . . . unless uninsured motor vehicle coverage is provided therein.' " 233 So. 3d at 1261 (quoting § 627.727(1), Fla. Stat. (2015)).  The Second District's conclusion in *Martin* that "[s]ection 627.727(1) does not specifically mandate coverage for claims unconnected with the insured vehicle" is unsupported.  670 So. 2d at 1000-01.  Even though the restrictive language of the collector policy and the reduced premium offered in exchange for those limitations distinguish it from a standard automobile insurance policy, the statutory language in section 627.727(1) does not make such a distinction between different types of "motor vehicles."  Accordingly, the limiting policy language in the collector vehicle policy at issue violates the statute.

Further, section 627.727(9)(d) allows for uninsured motorist coverage to be limited to exclude injuries suffered in vehicles "for which uninsured motorist coverage was not purchased."  However, "Lentini did not reject uninsured motorist coverage; instead, he selected stacked uninsured motorist coverage under the collector vehicle policy," and American Southern did not obtain Lentini's consent for such a limitation.  *Lentini*, 233 So. 3d at 1261.

## CONCLUSION

Because the limitations to uninsured motorist coverage in the collector vehicle policy do not comply with the statutory mandates under section 627.727,

we approve the Fifth District's decision in *Lentini* and disapprove the Second District's decision in *Martin*. We remand this case to the Fifth District for proceedings consistent with this opinion.

It is so ordered.

CANADY, C.J., and LABARGA, J., concur.
MUÑIZ, J., concurs in part and concurs in the judgment with an opinion, in which LAWSON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

MUÑIZ, J., concurring in part and concurring in the judgment.

Section 627.727(1), Florida Statutes (2015), provides that no motor vehicle insurance policy shall be delivered or issued in this state "unless uninsured motor vehicle coverage is provided therein or supplemental thereto." The first issue presented here is whether the motor vehicle insurance policy for Michael Lentini's collector 1992 Chevrolet Corvette was subject to the requirements of section 627.727(1). I agree with the plurality opinion that "the statutory language in section 627.727(1) does not make a distinction between different types of 'motor vehicles.'" Lentini's collector Corvette was a motor vehicle, and the collector vehicle insurance policy he took out on the car was a motor vehicle insurance policy subject to the requirements of section 627.727(1).

The second issue we must address is whether the collector vehicle policy—which covered injuries sustained by Lentini resulting from the negligence of an

uninsured motorist while driving the Corvette, but did not cover him while he was driving any of his other vehicles—provided "uninsured motor vehicle coverage" as required by section 627.727(1). That question turns on the meaning of "uninsured motor vehicle coverage." In other words, what are the minimum provisions an insurance company must include in a policy to meet the statutory requirement of "uninsured motor vehicle coverage"?

The statutory text does not provide a clear answer. The legislature has never defined "uninsured motor vehicle coverage," and our attempts to explain what it means have been based on a fifty-year-old case that analyzed an older version of section 627.727 and relied on a questionable reading of the statutory text. *See Mullis v. State Farm Mut. Auto. Ins. Co.*, 252 So. 2d 229, 238 (Fla. 1971) (Boyd, J., dissenting) ("We should not impose liability upon an insurance company which is not stated in the policies nor required by statute."); [3] *Martin v. St. Paul Fire &*

---

3. *Mullis*, for example, relied on the uncodified "public policy of the uninsured motorist statute"; borrowed a two-tiered classification system from other states that appears nowhere in the text of the Florida motor vehicle insurance statute; and interpreted a 1967 version of the statute that has changed in critical ways in the last fifty years. *See* 252 So. 2d at 233-37; *compare* § 627.0851(1), Fla. Stat. (1967) ("No automobile liability insurance . . . shall be delivered or issued . . . unless coverage is provided therein or supplemental thereto, in not less than limits described in § 324.021(7) . . . ."), *with* § 627.727(1), Fla. Stat. (2015) ("No motor vehicle liability insurance policy . . . shall be delivered or issued . . . unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.").

*Marine Ins. Co.*, 670 So. 2d 997, 1001 (Fla. 2d DCA 1996) ("In *Mullis*, the supreme court analyzed a standard family automobile policy before the advent of no-fault insurance and during the period in which uninsured motorist coverage was expressly tied to the financial responsibility statute. In that context, the court concluded that a policy issued to the *tortfeasor* to comply with financial responsibility would have provided liability insurance benefiting the injured motorcyclist as a claimant. . . . In contrast to the era of *Mullis*, an automobile now insured under a Florida no-fault policy is generally not a 'motor vehicle' for purposes of financial responsibility. . . . Section 627.727 no longer mandates that the uninsured motorist coverage provide a level of protection equivalent to the protection that would exist if the tortfeasor had a policy complying with financial responsibility. Thus, tying uninsured motorist coverage to financial responsibility coverage is no longer a compelling analysis."). It would be helpful to have an answer from the legislative branch.[4]

While we don't have a statutory definition of what "uninsured motor vehicle coverage" means, we do have a list of policy provisions that an insurance company

---

4. The legislature could choose to define minimum requirements for "uninsured motor vehicle coverage" in any number of ways, including providing different treatment for specialty policies like the one at issue here. The point is that such policy-laden line drawing should be a legislative, not a judicial, enterprise.

may exclude with the insured's informed consent.  Section 627.727(9) explains that

> *[i]nsurers may offer policies of uninsured motorist coverage containing policy provisions . . . establishing that if the insured accepts this offer:*
>
> (a) The coverage provided as to two or more motor vehicles shall not be added together to determine the limit of insurance coverage available to an injured person for any one accident . . . .
>
> (b) If at the time of the accident the injured person is occupying a motor vehicle, the uninsured motorist coverage available to her or him is the coverage available as to that motor vehicle.
>
> (c) If the injured person is occupying a motor vehicle which is not owned by her or him or by a family member residing with her or him, the injured person is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which she or he is a named insured or insured family member.  Such coverage shall be excess over the coverage on the vehicle the injured person is occupying.
>
> *(d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.*
>
> (e) If, at the time of the accident the injured person is not occupying a motor vehicle, she or he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which she or he is insured as a named insured or as an insured resident of the named insured's household.

§ 627.727(9)(a)-(e), Fla. Stat. (2015) (emphasis added).  There's a special form approved by the Office of Insurance Regulation that the insured must sign

disclosing what he or she is giving up. § 627.727(9); *see also Travelers Commercial Ins. Co. v. Harrington*, 154 So. 3d 1106, 1113 (Fla. 2014) (holding that the limitations in section 627.727(9) cannot take effect unless "the insurer informs the insured of the limitations of such coverage and the insured executes an approved form expressly electing non-stacking coverage"). After obtaining informed consent from the insured, the insurer must file revised premium rates with the Office of Insurance Regulation before these limitations on the policy can take effect. The insured is then entitled to a minimum twenty-percent reduction in the uninsured motor vehicle premium. *Id.*

But absent the insured's consent to exclude these provisions from the policy, the uninsured motor vehicle coverage must include these provisions. *See Lentini v. Am. S. Home Ins. Co.*, 233 So. 3d 1258, 1259-60 (Fla. 5th DCA 2017) ("The statute delineates specific limitations that insurers may place on uninsured motorist coverage . . . . In order to limit coverage, however, the insurer must obtain the insured's written consent on an approved form selecting the limitations on uninsured motorist coverage."). In fact, section 627.727(9) specifically requires that before obtaining an insured's consent to the policy limitations authorized under that subsection, an insurer must inform the insured "that such coverage is an alternative to coverage without such limitations." We may not know the universe of what "uninsured motor vehicle coverage" has to include, but we know it at least

has to include those provisions that can be excluded under section 627.727(9). Otherwise, there would be no need for the legislature to provide the detailed process for limiting coverage and discounts for excluding these provisions if the run-of-the-mill uninsured motor vehicle coverage did not include the list of provisions in section 627.727(9).

This is important here because Lentini did not use the section 627.727(9) procedure to exclude provisions from his uninsured motor vehicle coverage, and American Southern did not file revised premium rates with the Office of Insurance Regulation. "[A]lthough American Southern could have obtained Lentini's informed consent to limit uninsured motorist coverage while occupying a vehicle for which uninsured motorist coverage was not purchased, *see id.* § 627.727(9)(d), it is undisputed that it made no attempt to do so in this case." *Lentini*, 233 So. 3d at 1261. As the plurality opinion explains, " '[Lentini] selected stacked uninsured motorist coverage under the collector vehicle policy,' and American Southern did not obtain Lentini's consent for such a limitation." Plurality op. at 5 (quoting *Lentini*, 233 So. 3d at 1261).

I concur in the plurality opinion[5] to the extent it approves the Fifth District's decision because (1) "uninsured motor vehicle coverage" must include those policy

---

5. The plurality opinion (at 5) suggests that the text of section 627.727(1) itself "specifically" requires coverage "for claims unconnected with the insured

- 11 -

provisions that the insured is authorized to exclude under section 627.727(9); (2) Lentini's policy excluded uninsured motor vehicle coverage for injuries he suffered as a result of the negligence of an uninsured motorist while occupying another vehicle he owned; and (3) Lentini did not follow the section 627.727(9) informed consent procedure to limit his policy. Because the section 627.727(9) procedure was not followed, Lentini's policy was required to cover him for injuries that resulted from the negligence of an uninsured motorist while Lentini was driving one of his other vehicles. Thus, the portion of Lentini's motor vehicle insurance policy limiting uninsured motorist coverage to injuries he sustained while driving his collector Corvette was void because American Southern never obtained Lentini's informed consent to these policy limitations. *See Young v. Progressive Se. Ins. Co.*, 753 So. 2d 80, 83 (Fla. 2000) ("[P]rovisions in uninsured motorist policies that provide less coverage than required by the statute are void as contrary to public policy.").

LAWSON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

      Fifth District - Case No. 5D17-326

      (Hernando County)

---

vehicle." The resolution of this case does not depend on that conclusion, and I would not reach that issue.

Raoul G. Cantero, David P. Draigh, and Zachary B. Dickens of White & Case LLP, Miami, Florida; and Andrew E. Grigsby of Hinshaw & Culbertson LLP, Coral Gables, Florida,

  for Petitioner

John N. Bogdanoff and Christopher V. Carlyle of The Carlyle Appellate Law Firm, Orlando, Florida; and Anthony T. Martino of Clark & Martino, P.A., Tampa, Florida,

  for Respondent